ARTEMAS B. SWEEZEY & others *vs.* MAYOR OF MALDEN & others.

Middlesex.    May 20, October 2, 1930. — January 5, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Malden. Municipal Corporations,* By-laws and ordinances, Contracts, Officers and agents.

An advertisement by the street commission of Malden calling for sealed proposals for furnishing and laying a pavement on a certain street which would require an expenditure by the city of more than $500 recited among other things that "Bids will be received on the following types of construction: Warrenite Bitulithic, Topeka Bitulithic Sheet Asphalt, or equal . . . . Specifications and plans may be seen and all necessary information obtained at the office of the City Engineer between 8:00 A.M. and 12 M. daily." An ordinance of the city read as follows: "Before making any contract for the furnishing of labor or materials, involving the expenditure of more than five hundred dollars, the committee or board having charge of the same shall prepare, or cause to be prepared, plans and specifications, advertise for public bids in the form of sealed proposals for furnishing said labor and materials in one or more of the local papers at least one week before the awarding of said contract." The commission pre-

pared no specifications as to the composition and the manner of laying the wearing surface or the area of the construction, but required bidders to submit specifications as to composition and manner of laying wearing surface with their respective bids. Bids were received and a contract was awarded. In a suit under G. L. c. 40, § 53, to restrain the municipal officers from carrying out the contract, it was *held*, that

(1) It was the duty of the commission under the ordinance to furnish detailed specifications respecting the method of construction and the materials and proportions to be used;

(2) Permitting each bidder to furnish his own specifications for the construction of the wearing surface was not a compliance with the requirements of the ordinance: such a method of bidding would not result in bids being submitted on any common basis;

(3) The awarding of the contract was illegal.

BILL IN EQUITY, filed in the Superior Court on November 8, 1929, and afterwards amended, described in the opinion.

The defendants demurred. The demurrer was heard by *Qua*, J., by whose order there were entered an interlocutory decree sustaining it and a final decree dismissing the bill. The plaintiffs appealed.

The case was submitted on briefs.

*J. F. Neal*, for the plaintiffs.

*M. L. Brown*, City Solicitor, for mayor of Malden and others.

*J. P. Lyons*, for John McCourt Company.

CROSBY, J. This is a bill in equity brought by more than ten taxable inhabitants of the city of Malden against the mayor and others, under the provisions of G. L. c. 40, § 53, to restrain certain officers of the city from carrying out a contract, entered into and approved by said officers, for the paving of Lebanon Street. After the submission of the case on briefs the plaintiffs contended that the advertisement for bids as recited in the record is erroneous because a comma was not inserted between the words "Topeka Bitulithic" and the words "Sheet Asphalt," and that the comma appears in the original advertisement but was omitted by mistake from the printed record. It is plain that we are bound by the record and can consider the case only upon the record presented. The presence or absence of the comma

is immaterial so far as the issues before us for decision are concerned.

The Revised Ordinances of the city of Malden of 1928, c. 53, §§ 14 and 15, read as follows: (§ 14) "Before making any contract for the furnishing of labor or materials, involving the expenditure of more than five hundred dollars, the committee or board having charge of the same shall prepare, or cause to be prepared, plans and specifications, advertise for public bids in the form of sealed proposals for furnishing said labor and materials in one or more of the local papers at least one week before the awarding of said contract, and that citizens and taxpayers of the city of Malden be given the preference in awarding said contracts, all other considerations being equal"; (§ 15) "In cases where competitive bids are requested by a committee or municipal board for a contract with the city, no proposals shall be received by the said committee or board unless the same are sealed. All proposals shall be publicly opened and read at the hour and place designated: provided, always, that the said committee or board may reject any or all proposals, or waive defects, when, in their judgment, the interest of the city justify such a course. In the event of the rejection of all bids as hereinbefore provided no contract involving the expenditure of more than five hundred dollars shall be awarded unless competitive bids are again requested."

The bill alleges that the defendants Reed, McGillicuddy and Hoffman, acting in their official capacity as the street and water commission, caused an advertisement for bids to be published in a newspaper in Malden which called for sealed proposals for furnishing and laying a pavement on the above named street, and recited among other things that "Bids will be received on the following types of construction: Warrenite Bitulithic, Topeka Bitulithic Sheet Asphalt, or equal . . . : Specifications and plans may be seen and all necessary information obtained at the office of the City Engineer between 8:00 A.M. and 12 M. daily. The Commission reserves the right to reject

any or all proposals, or to accept any proposal, should it deem it for the interest of the City of Malden to do so." The bill further alleges that "A copy of the specifications referred to in the foregoing proposal is hereto annexed and made a part of this bill and marked ' A ' "; that "said proposed agreement or contract involved an expenditure by the City of Malden or on its behalf of over $500 "; and that "in all the types of construction referred to in said advertisement and proposal, the preparation of the sub-grade, the concrete foundation and the wearing surface are essential, important and necessary parts of the construction or work advertised for in said proposal."

It is the contention of the plaintiffs that the specifications and plans as prepared and advertised were not in compliance with §§ 14 and 15 of the Revised Ordinances for the reasons set forth in the seventh and eighth paragraphs of the bill, which read as follows: (7) "That specifications and plans were prepared as advertised covering the foundation for said construction, but no specifications as to the composition, the manner of laying the wearing surface of said construction or as to the area thereof were prepared by said commission or by any person on behalf of the city of Malden as required by c. 53, § 14 of the Revised Ordinances of the city of Malden; . . . but on the contrary all bidders were required to furnish and submit specifications for the composition and manner of laying wearing surface with their respective bids "; (8) "That said street and water commission did not prepare definite, detailed and proper specifications for said contract on any common basis on which the necessary competitive bids could be submitted, in compliance with c. LIII, § 15, Revised Ordinances of said City of Malden . . . by reason whereof reputable contractors were prevented from submitting bids or proposals for said contract, and whereby said contract was made illegal as far. as said city of Malden was concerned."

Under § 14 of the Revised Ordinances it was the duty of the city officials in charge of the proposed work to pre-

pare, or cause to be prepared, plans and specifications, and to advertise for public bids in the form of sealed proposals for furnishing labor and materials. The plans and specifications must contain all the information necessary to enable prospective bidders to prepare their bids. The purpose of the ordinance was to secure honest and open competition. *Morse* v. *Boston,* 253 Mass. 247, and cases cited. The advertisement and the plans and specifications must state the quantity and quality of the work required with as much certainty and definiteness as may be practicable. Every bidder must be able to know what materials are to be furnished and what work is to be performed in order to comply with the contract. If a contract is entered into in violation of the ordinance, good faith on the part of city officials is immaterial. *Safford* v. *Lowell,* 255 Mass. 220. It is the contention of the plaintiffs that the specifications relating to the wearing surface of the street were unauthorized and illegal. The specifications for that part of the work are as follows: " A wearing surface 2 inches in thickness is to be laid upon the concrete base. The top of the completed work to be true to the grade given by the Engineer and free from any depressions. The composition and manner of laying wearing surface shall comply with the specifications submitted by the contractor with his bid."

No contention is made that it was not within the power of the city to enact §§ 14 and 15 of the Revised Ordinances. In *Burt* v. *Municipal Council of Taunton,* 272 Mass. 130, where a somewhat similar ordinance was considered, it was said at page 133: " It is a provision of substance partaking of the nature of a rule for the conduct of the general business affairs of the city. Its purpose is to protect the financial interests of the city by preventing favoritism in awarding contracts and to put a limitation on the otherwise very broad powers of the city officers to bind the city by contract. Its tendency is to give full publicity to proposed city contracts, to establish genuine and open competition upon the same footing after proper advertisement, and to insure honest methods

of letting contracts. All these steps conduce to guard the public welfare."

The advertisement for bids recites that " Specifications and plans may be seen and all necessary information obtained at the office of the City Engineer." The specifications read as follows: " The work to be done is to make all excavations, and do all filling, construct all foundations and lay all paving; furnish specifications for the composition and manner of laying wearing surface; furnish and lay 2 inch wearing surface upon the concrete base already laid. . . . The composition and manner of laying wearing surface shall comply with the specifications submitted by the contractor with his bid." The advertisement recites that " Bids will be received on the following types of construction: Warrenite Bitulithic, Topeka Bitulithic Sheet Asphalt, or equal." It is plain that the kinds of construction described refer solely to the wearing surface of the street and not to the concrete foundation, as the specifications and plans for the latter were set forth elsewhere. In all the types of construction referred to in the proposal or advertisement, the subgrade and foundation as well as the wearing surface are " essential, important and necessary parts of the construction or work advertised for in said proposal."

The advertisement calling for bids based upon the above named materials, or equal, did not contain any specifications respecting construction by " Topeka Bitulithic," and for which the contract was awarded, or as to the grade, quality and proportions of sand, gravel, asphalt, or other materials required for that kind of wearing surface, or as to the manner in which the same should be mixed or laid. The bidder, by the terms of the advertisement, was required not only to furnish his own specifications for the composition of the wearing surface with the named types of construction, or equal, but was also required to specify in detail the manner in which he proposed to lay the wearing surface. We are of opinion that it was the duty of the city officials in compliance with §§ 14 and 15 of the Revised Ordinances to furnish de-

tailed specifications respecting the method of construction and the materials and proportions to be used. To permit each bidder to furnish his own specifications for the construction of the wearing surface might, and probably would, allow a substantial variance in the manner of construction and its cost. Such a method of bidding would not result in bids being submitted on any common basis. Where, as here, each bidder is invited to bid upon his own specifications, it is plain that there can be no real competition between such bidders. Such an advertisement not only destroys competition, but gives city officials an opportunity to exercise favoritism in awarding contracts. A compliance with the ordinances makes it mandatory that prospective bidders shall stand upon an equal footing and that no one shall be permitted to submit his bid upon a basis different from that of any other bidder. To allow a bidder to furnish his own specifications for any material part of the contract in question would destroy genuine and fair competition and be subversive of the public interests. The purpose of the ordinances is to prevent fraud and favoritism and to protect the financial interests of the city. *Warren* v. *Street Commissioners of Boston,* 181 Mass. 6. *Morse* v. *Boston, supra. Safford* v. *Lowell, supra. Burt* v. *Municipal Council of Taunton, supra.*

Laches as a ground for demurrer has not been argued. It is manifest that the bill could not be dismissed on that ground. In the opinion of a majority of the court the interlocutory decree sustaining the demurrer and the final decree dismissing the bill must be reversed, and a decree entered overruling the demurrer.

*Ordered accordingly.*