CONTROL DATA CORPORATION
v.
State Purchasing Agent and State
Lottery Commission and Robert Q.
Crane, George Luciano, Joseph P.
McDonough, Frederick S. Pillsbury
and Robert K. Sheehan, individually as
they are Members of said Lottery,
William E. Perrault as he is Executive
Director of said Lottery

Civ. A. No. 44393

Superior Court Department
Trial Court of the
Commonwealth of Massachusetts

February 2, 1981

Ronald W. Keefe, Joseph T. Travaline for the plaintiff.
Francis X. Bellotti (AG), Paul A. Good (AAG) for the defendant.

## FINDINGS AND RULINGS

### Introduction

MASON, J. This is an action brought by plaintiff, Control Data Corporation, against the defendants State Purchasing Agent and State Lottery Commission (Commission) wherein plaintiff seeks declaratory and injunctive relief requiring defendants to evaluate plaintiff's proposal submitted for the procurement of an On-Line Number Selection Lottery Processing System. The proposal was made in response to a Request for Proposal (RFP) issued by the Commission on July 25, 1980 with a contemplated contract award date of September 30, 1980. Alleging that the de-fendants failed to evaluate plaintiff's pro-posal in accordance with the terms of the RFP, plaintiff sought to enjoin the Commission from awarding the contract and was denied a preliminary injunctive relief. Upon the agreement of the parties, the case was assigned for trial and trial commenced on January 5, 1981. The contract award documents for the procurement were exe-cuted by the Commission and American Totalisator Co., Inc. (Am Tote) on the date that trial commenced.

### Facts

Since May, 1978, the Commission has attempted to award a contract for an On-Line Number Selection Lottery Processing System. The first RFP resulted in a rejec-tion of all bids. The Lottery then allowed rebids on the original RFP resulting in an award to Am Tote, which was subsequently challenged. This challenge was the subject of litigation in **Datatrol, Inc. v. State Purchasing Agent**, 1980 Mass. Adv. Sh. 299. In **Datatrol**, the Court held that the problem-oriented specifications of the RFP did not meet the requirements of the public bidding statute, G.L. c. 7, sec. 22. The third RFP was also challenged and it was again determined that the requirements of G.L. c. 7, sec. 22 were applicable and had not been satisfied. **Datatrol, Inc. v. Massachusetts State Lottery Commission et al.**, 1980 Mass. Adv. Sh. 323. The plaintiff had not filed proposals in response to the first three RFPs, and had advised the Commonwealth that it was unable to bid due to the limiting nature of the invitations.

Prior to issuance of the fourth RFP, which is the subject of the instant litigation, prospective vendors, including plaintiff, were issued a preliminary copy of the RFP by the Commission with an invitation to comment on its provisions. In response to that invitation, the plaintiff submitted a document in which it commented on several contractual terms, suggested alternative terms, discussed various characteristics of the Massachusetts game products and services, and offered modifications based on its experience with lottery systems in several other states. (Exhibit 4.)

On July 25, 1980, the Commission issued the fourth RFP, Requisition 1981-11, (Exh. 1) and delivered copies to four industry vendors, including the plaintiff. The RFP contained specifications for the procurement of an on-line computer-controlled wagering system. The RFP stated that the system was to initially replace a portion of an off-line wagering system currently installed for the processing of the Massachusetts Lottery's Daily Numbers Game and might eventually replace the entire system. (Exhibit 1, p. iv.)

Several provisions of the fourth RFP differed from the prior invitations to bid. Although many of the specifications which had been previously left open were more precisely defined, there was a new provision which clearly encouraged bidders who could not meet all requirements to offer alternatives:

> Requirements which can be met only partially should be stated with explanation and delivery. Requirements which cannot be met at all should also be stated along with reasons or alternatives which may be employed to obviate the requirement. ... As the procurement is a competitive bid among vendors with strengths in certain areas and liabilities in others, it may turn out that a loss in proposal evaluation points in one category for one vendor may be made up in another category depending upon the bids of other suppliers. (Exhibit 1, pp. 8, 9.)

The RFP also contained a provision entitled "Exceptions to Bid Specifications," wherein the Lottery reserved the option to accept bids containing exceptions or deviations from the system specifications "provided such exceptions or deviations will not substantially affect the system's performance and it is in its best interest to do so." (Exhibit 1, sec.9.18.)

Sec. 9.48 of the RFP stated that the Commonwealth intended that the award procedure result in an award based on the following factors: (1) quality of the system proposed, (2) satisfaction of the needs of the Commonwealth, and (3) price. It was also stated that each factor would receive the weight assigned it by operation of the award procedure. The section noted that G.L. c. 7, sec. 22 contained no low bidder requirement, that the Commonwealth did not intend to inject such a requirement into the award and that the State Purchasing Agent reserved the right to accept or reject any or all bids if it was deemed in the best interest of the Commonwealth.

In a provision that had not been included in the previous RFPs, Section 9.54 established a Technical Evaluation Committee (TEC) to review and approve the RFP and the specifications contained therein, and to evaluate the vendor proposals received. In evaluating the proposals, the TEC was required to develop a ranking of such proposals and submit a recommendation to the Executive Director of the Lottery.

The procedure to be followed by the TEC in evaluating the proposals was specifically outlined in Section 9.55 which reads, in part:

> Proposals received in response to this invitation to bid shall be evaluated in two major steps. First, technical proposals containing information on the vendor's proposed system, delivery and capability of the company to support the system proposed will be evaluated utilizing a point evaluation system described in Paragraph 9.56 below. ... Each (representative or firm on the Committee) will arrive at a point score for each bidding vendor. At that point, a consensus of the four individual scores will be agreed upon by the four groups meeting together and then discussing the reasons for the scoring with each vendor then giving a final score. This procedure will be followed prior to the opening of volumes containing pricing information. After an agreed-upon scoring has been done on technical merits, then pricing proposals will be evaluated and scored again utilizing the point evaluation and a grand total scoring of vendor proposals arrived at. The vendor with the highest total point score shall then be recommended for award.
>
> A complete description of the point eval-

uation system is set forth in sec. 9.56, which identifies the four major criteria to be evaluated and assigns a point value to each. Out of a total of 100 points, 40 were assigned conformance to technical specifications, 40 to system costs, 10 to delivery and the remaining 10 to the criteria of experience, resources, financial stability, performance and contract terms. Further breakdowns within each criterion are also outlined.

A draftsman of the RFP testified that the purpose of the point evaluation procedure was to provide a mechanism for meaningful, manageable comparison of vendors' bid proposals.

On August 26, 1980, the plaintiff made a timely submission of a detailed bid proposal. Three other vendors also submitted proposals: Am Tote, Autotote Ltd. and Datatrol, Inc.

On September 16, 1980, the TEC sent a memorandum to the Executive Director of the Commission stating that, in the judgment of the TEC, plaintiff's proposal did not conform to certain basic requirements of the specifications in that it "ignores the requirement that the system be able to process the current off-line bet options." (Exhibit 7). Counsel for the Commission had determined that "conformance to the specifications is a necessary condition precedent to any award," and it was, therefore, "pointless to require the committee to further evaluate and award points based upon a proposal upon which, as a matter of law, no award may be made." (Exhibit 7.)

By letter from the Acting Purchasing Agent, dated September 18, 1980, the plaintiff was notified that the technical portion of its proposal did not conform to certain basic requirements of the specifications and that a pricing evaluation would not be done. (Exhibit 3) The pricing proposal submitted by plaintiff remains unopened in the custody of the State Purchasing Agent.

Subsequently, the TEC evaluated the other three proposals in accordance with the evaluation procedure prescribed in the RFP in secs. 9.55 and 9.56. The evaluation scores assigned to these proposals ranged from 91.4 per cent to 81.6 per cent. Plaintiff's proposal was never evaluated in accordance with the provisions of secs. 9.55 and 9.56 of the RFP.

## Discussion

In Datatrol, Inc. v. State Purchasing Agent, 1980 Mass. Adv. Sh. 299, the Supreme Judicial Court held that G.L. c. 7, sec. 22 was applicable to the award of a lottery computer system and that the Lottery's problem-oriented specifications, in Requisition 78-59, did not comply with the requirements of the statute. The Court stated that the purpose of competitive bidding statutes is "to establish genuine and open competition after due public advertisement in the letting of contracts for . . . (public) work, to. prevent favoritism in awarding such contracts and to secure honest methods of letting contracts in the public interests." 1980 Mass. Adv. Sh. at 316, citing Morse v. Boston, 253 Mass. 247, 252 (1925).

In sustaining the attack on the open specifications of the RFP, the Court in Datatrol found that the 'equal footing' rationale developed in Sweezey v. Mayor of Malden, 273 Mass. 536, 542 (1930-31), was applicable to the RFP issued by the Lottery. In Sweezey, the Court held that permitting bidders on a public contract to submit their own specifications resulted in bids not being submitted on any common basis, and not only destroyed competition but also gave officials an opportunity to exercise favoritism in awarding contracts. The Court ruled that "A compliance with the ordinances makes it mandatory that prospective bidders shall stand upon an equal footing and that no one shall be permitted to submit his bid upon a basis different from that of any other bidder." Id. at 542.

In Datatrol, the Court interpreted the common footing requirements as designed to ensure meaningful, manageable comparisons of bids. It does not require that the specifications be so definite that all bidders are bidding on exactly the same thing. Datatrol at 319.

The RFP which is the subject of the

instant litigation invited vendors to submit alternative specifications, while suggesting that they attempt to conform as closely as possible to the stated specifications to be more competitive in gaining evaluation points. Although the defendants contend that language in the RFP limits possible alternative specifications to those that would be compatible with the current Massachusetts system, the "Exception Provision" contains no reference to elements of the system which would be considered basic and nonalterable. The compatibility of a proposal with the current Massachusetts system could be assessed under the established evaluation procedures.

In Datatrol, supra, the trial judge found that the open specifications in the RFP combined with the statement that the Lottery could assign various weights to the evaluation criteria, allowed the Lottery "to select any bidder it desired without reference to specific guidelines." Id. at 306, n.5. Similarly, in the instant case, the failure to use the prescribed system of evaluation, could lead to rejection of proposals without reference to specific guidelines in the RFP, which required evaluations and allowed for alternatives in bids. The potential for abuse, where a public contract is involved, is the same. The goal of G.L. c. 7, sec. 22, to avoid favoritism in government contracting, could be circumvented by allowing select proposals to pass through the evaluation procedure, while eliminating potentially competitive proposals at a preevaluation stage.

The rights and obligations flowing from the contract of January 5, 1981, between Am Tote and defendant Perrault are not properly at issue in this proceeding.[1] The issue presently before the Court is limited to a determination of the plaintiff's right to an evaluation in accordance with the provisions of secs. 9.55 and 9.56 of the RFP. There is no question that the selection procedure was designed to insure a quantitative evaluation of the bids and to provide a method for meaningful, objective comparison of the vendors. If the defendants' perception of plaintiff's bid was that it ignored what was characterized as basic requisites of the Massachusetts System, the RFP provided a built-in mechanism within which such a deficiency could be addressed. There was no provision in the RFP allowing the use of a preevaluation process to eliminate certain vendors. Rather, the defendants committed themselves to evaluate the proposals according to the method established in secs. 9.55 and 9.56.

### Rulings

Plaintiff is entitled to an evaluation of its proposal in accordance with the procedures set forth in secs. 9.55 and 9.56 of the RFP. To allow the defendants to ignore the established weighted criteria in their evaluation of plaintiff's proposal would sanction the circumvention of the 'common footing' mandate of G.L. c. 7, sec. 22.

Plaintiff has not alleged or shown that the defendants' determination that its proposal did not conform to certain basic requirements of the specifications in the RFP was erroneous. Nor has plaintiff alleged or shown that the anticipated result of the evaluation of its proposal under the procedures established in the RFP would in any way affect the defendant's selection of Am Tote as the successful bidder. There has been no allegation of evidence indicating bad faith on the part of the defendants in this matter.

In the absence of any such allegations or evidence, and with awareness that an injunction is not to be lightly granted and should be no more intrusive than necessary to provide the relief to which plaintiff is entitled, the court finds no basis for enjoining defendants from proceeding with their contract with Am Tote. There is no evidence before the court showing that plaintiff will be irreparably harmed by the defendants' implementation of the contract.

In addressing the issue raised in this proceeding concerning plaintiff's right to an evaluation in accordance with secs. 9.55 and 9.56 of the RFP, it is ORDERED that

---

[1]The RFP contains a provision which requires the Lottery to notify the awardee of the contract when the award has been challenged, and mandates that the Lottery use due diligence in resolving such conflict. (Exhibit 1, p. vi.)

the defendant Commission provide plaintiff with an evaluation of its proposal according to the procedures specified in sec. 9.55 and 9.56 of the RFP within ten days.

Plaintiff's request for further relief is denied.

Arthur M. Mason
Justice of the Superior Court Dept.