391 Mass. 829 (1984)
465 N.E.2d 1173
THE MODERN CONTINENTAL CONSTRUCTION CO., INC.
vs.
CITY OF LOWELL & another.[1]
Supreme Judicial Court of Massachusetts, Suffolk.
January 13, 1984.
May 14, 1984.
Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.
John J. Spignesi (Thomas E. Sweeney, Assistant City Solicitor, with him) for the defendants.
Charles E. Schaub, Jr., for the plaintiff.
Stephen E. Cotton, for the Inspector General, amicus curiae, submitted a brief.
Sally A. Corwin, for Associated Subcontractors of Massachusetts, amicus curiae, submitted a brief.
John P. Davey & Ellen C. Davey, for Utility Contractors Association of New England, amicus curiae, submitted a brief.
NOLAN, J.
The city of Lowell (Lowell) and P. Gioioso & Sons, Inc. (Gioioso), sought relief in the Appeals Court, pursuant to the first paragraph of G.L.c. 231, § 118, from a preliminary injunction issued by a Superior Court judge in an action by The Modern Continental Construction Co., Inc. (Modern Continental). The preliminary injunction restrains Lowell from awarding a contract to Gioioso or any other party for the construction of a regional and municipal interceptor[2] until the project is rebid in accordance with the requirements of G.L.c. 149, §§ 44A-44H. A single justice of the Appeals Court refused to order that the injunction be dissolved. However, because he considered the injunction as essentially dispositive of the merits of the action, and because important questions of law were raised, he directed that the appeal pursuant to the second paragraph of G.L.c. 231, § 118, be expedited. *831 We transferred the case to this court on our own motion. We perceive no error in the order enjoining Lowell, and remand the case to the Superior Court for further proceedings consistent with this opinion.[3]
1. Factual background and prior proceedings. In the summer of 1983, Lowell invited bids for the interceptor project. The project will require construction of approximately two and one-half miles of sewer pipeline and two pumping stations. One prefabricated pumping station will be situated below ground. The other, the Beaver Brook station, combines a subterranean diversion structure with a pumping station constructed on top of it. The Beaver Brook station is the subject of the present controversy. Both of the pumping stations will contain equipment and are intended to be fully automated. The Beaver Brook station will also include certain amenities, such as telephones and a rest room.
The city's advertisements concerning the project stated that Lowell would proceed "in strict accordance" with G.L.c. 149, §§ 44A-44L, and other applicable laws.[4] The "Information for Bidders" section of the advertisement stated further that bidding would proceed in accordance with G.L.c. 149, §§ 44A-44L,[5] *832 and G.L.c. 30, § 39M.[6] Filed subbids were required only as to the Beaver Brook pumping station. In all other respects, the bidding and award procedure followed the requirements of G.L.c. 30, § 39M.
At the bid opening, Gioioso was the apparent low bidder and Modern Continental the third lowest among the bids submitted. Modern Continental then protested that the project in its entirety should have been offered for bids under G.L.c. 149, §§ 44A-44H, that bidder prequalification was required, that the bids must be rejected and the project rebid in accordance with G.L.c. 149, §§ 44A-44H. Following a hearing before Lowell officials affording the three lowest bidders an opportunity to present oral and written statements, Lowell rejected Modern Continental's contentions and affirmed its plan to award the contract to Gioioso. Modern Continental then submitted its protest to the Department of Labor and Industries *833 (department),[7] which conducted an informal conference attended by Lowell, Modern Continental, Gioioso, and other interested parties.
The department issued an administrative decision stating that, because Lowell had offered for bids the project as a whole, it "had no choice under the law but to bid pursuant to Chapter 149, Section 44A-H." The department reasoned that the Beaver Brook pumping station was a "building" within the ordinary meaning of that word, and as a "building" which costs more than $5,000, it would be subject to G.L.c. 149, §§ 44A-44H. The public works aspect of the project was not controlling. The department saw no limitation within G.L.c. 149, §§ 44A-44H, to contracts "solely for the construction of a public building." The department rejected Gioioso's argument that the dominant purpose of the contract, whether primarily for public buildings or public works, should control which statute applies. The department offered Lowell two bidding options. First, Lowell might offer for bids the entire project under G.L.c. 149, §§ 44A-44H. Alternatively, Lowell might split the project into separate public building and public work components, using the respective procedures of G.L.c. 149, §§ 44A-44H, for the "building" part of the project and G.L.c. 30, § 39M, for the "public works" component. The department ordered Lowell to reject all bids and to rebid the project in conformity with the options offered by the department.
The following week, Lowell notified the department in writing of its intent to award the interceptor project contract to Gioioso. Modern Continental then commenced this action for declaratory and injunctive relief seeking an injunction to order Lowell to refrain from awarding the contract until the project was rebid under G.L.c. 149, §§ 44A-44H. In affidavits submitted to the Superior Court, Lowell opposed Modern Continental's request for preliminary relief by stating that the delay caused by rebidding would cost an additional $25,000, require *834 additional legal, engineering, and administrative efforts for which Lowell could not seek State or Federal reimbursement, require Lowell to bear the difference in cost between the original bids and the resubmitted bids, and subject the city to fines owing to delay in implementing pollution control measures. Further, Lowell represented that the division and other State agencies had advised the city that G.L.c. 149, §§ 44A-44H, were inapplicable to the project.[8] Lowell's consulting engineers stated that subbids for Beaver Brook were recommended to Lowell only to enhance competition. The engineers had telephoned the division prior to Lowell's advertisement for bids, and were told bidder prequalification was not required. The consulting engineers cited the existence of serious health hazards posed by Lowell's river pollution problems, a delay of six months before commencing the project if rebidding were required, and enhanced nonreimbursable costs as reasons for not requiring rebidding. Furthermore, the engineers noted they *835 had reviewed Gioioso's qualifications after the bid opening, and based on that review had recommended to Lowell that Gioioso receive the contract award. Gioioso's affidavit averred that it had made significant expenditures in bidding and in anticipation of commencing the project, that delays caused by rebidding would mean the project could not be undertaken until the following spring, that inflation would raise the contract price by ten per cent, that Gioioso had not been subject to prequalification on other sewer pipeline and pumping station projects, and that it previously had been prequalified by Lowell.
The judge granted Modern Continental's request for a preliminary injunction without opinion or findings, and this appeal ensued. On appeal, Lowell and Gioioso press the following arguments: first, that Modern Continental lacks standing to request injunctive relief; second, that Modern Continental is estopped from requesting injunctive relief; third, that Modern Continental makes no showing of irreparable harm sufficient to obtain injunctive relief; fourth, that Modern Continental's contention that the project is subject to G.L.c. 149 is without merit; and fifth, that if G.L.c. 149 applies, deviations from its requirements were minor and do not require rejection of all bids.
2. Standing. Lowell and Gioioso argue that Modern Continental lacks standing to pursue the instant action because Modern Continental has failed to allege irreparable harm as a result of Lowell's awarding the contract to Gioioso. The defendants confuse the issue of standing with the requirement of demonstrating irreparable harm in obtaining preliminary injunctive relief. It is well established that parties challenging compliance with the bidding procedures set forth in G.L.c. 149, §§ 44A-44H, need not meet rigid "but for" standing requirements by asserting that if there had been compliance with the statute, they certainly would have been awarded the contract. The challenging party need show only that it possessed the potential to obtain the award. The right to consideration in the event the apparent low bidder is rejected is the interest protected by the flexible standing requirements of G.L.c. 149, §§ 44A-44H. Quincy Ornamental Iron Works, Inc. v. *836 Findlen, 353 Mass. 85, 87-88 (1967). If the situation were otherwise, the important role played by individual bidders in securing compliance with the bidding statutes and legislative policy objectives would be diminished.[9]
3. Estoppel. The defendants cite Modern Continental's failure to question Lowell regarding the applicability of prequalification procedures before the bid opening as requiring the application of the doctrine of estoppel to Modern Continental's case. The defendants assert that Modern Continental was obliged to notify Lowell during the bidding period of its belief that prequalification was necessary. This argument falls wide of the mark for two reasons. First, as the awarding authority, Lowell is charged with compliance with the bidding statutes; Lowell itself advertised that its procedures would comply with G.L.c. 149, §§ 44A-44H. There is no basis for believing that Lowell in any way relied to its detriment on Modern Continental. Datatrol Inc. v. State Purchasing Agent, 379 Mass. 679, 690-691 (1980). Secondly, we do not perceive that Modern Continental's silence during the bidding procedure constitutes the type of conduct requisite to establish the defense of estoppel. It is impossible to imagine how the awarding authority, which is charged with statutory compliance and which represented to bidders its intent to comply with the statute, suffered any injury justifying assertion of this equitable defense. If by estoppel Lowell and Gioioso actually mean "laches," that argument has some substance, but will not carry the day. It is true enough that the problems presented by the instant litigation could have been averted had Lowell decided *837 before the bid opening, at Modern Continental's suggestion, to comply with prequalification requirements. This hypothetical solution, however, is merely that. We fail to see how Lowell has been injured by any inaction on Modern Continental's part. If Lowell had complied with the department's decision, much of the delay of which it now complains would have been avoided.
4. Propriety of injunctive relief. Lowell and Gioioso contend that Modern Continental failed to present sufficient evidence of irreparable harm to warrant preliminary injunctive relief. The defendants also assert that even if Modern Continental has sustained its burden, on balance Lowell and Gioioso will suffer greater injury, owing to the delays which rebidding will cause in commencing construction, the costs of rebidding, the inflationary impact of delay, and the harm to the public interest occasioned by continued pollution in the Merrimack River.
The standards for awarding or denying preliminary relief, and for appellate review of such decisions, are set forth in detail in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 610-618 (1980). Our discussion in that case permits us to conclude that the judge did not abuse his discretion in granting injunctive relief. The department's directive indicates that Modern Continental had a reasonable likelihood of success on the merits. Second, if the contract were awarded to Gioioso without rebidding, Modern Continental's opportunity for consideration as a bidder would be forever lost, and its remedy at law for the damages incurred in preparing its bid falls far short of being the equivalent of the potential to win the contract. See Paul Sardella Constr. Co. v. Braintree Hous. Auth., 3 Mass. App. Ct. 326, 333-335 (1975), S.C., 371 Mass. 235, 243 (1976).
On balance, the equities do not favor Lowell and Gioioso. First, had Lowell adhered to the department's decision and rebid the contract immediately, it is likely that Lowell and Gioioso would have been able to avail themselves of Gioioso's *838 previously prepared prequalification statements.[10] Second, this court is unpersuaded that enhanced administrative costs are sufficient to justify the denial of injunctive relief where the agency's own actions have necessitated such expenditures. Cf. Interstate Eng'g Corp. v. Fitchburg, 367 Mass. 751, 760-761 n. 16 (1975). The harm to the public by preserving the status quo must be viewed in light of the minimal harm that would have ensued had Lowell complied with the injunction rather than pursued this appeal. Finally, although the harm to Gioioso in having had its prior bid information made public is a detriment to it in the next bidding, Gioioso's individual interest is not sufficiently compelling to permit a deviation from the bidding statute's requirements. If some bidder inequality results from rebidding now, it is the result of the awarding authority's misperception of its duties. In sum, we perceive no abuse of discretion on the part of the judge in granting preliminary relief to Modern Continental.
5. Interpretation of G.L.c. 30, § 39M, and G.L.c. 149, §§ 44A-44H. The parties and amici curiae request this court to clarify the meaning of "building" as used in the bidding statutes so that awarding authorities will be able to proceed with certainty in choosing the statute pursuant to which they will invite bids. Modern Continental argues that the pumping station is a "building" in the ordinary sense of the word and that because the cost of the pumping station is significant in proportion to the entire project, G.L.c. 149, §§ 44A-44H, must be applied. Lowell and Gioioso state that the "fundamental purpose" of the project should be determinative of the proper bidding statute. The Inspector General, as amicus, argues *839 that the pumping station is merely "incidental" to the sewer project. The Inspector General cites evidence of legislative intent to exempt "horizontal construction" from the revisions of G.L.c. 149, and urges this court to adopt the reasoning of the division, which would permit awarding authorities to determine whether a "building" is "significant" or "incidental" to resolve this problem. We disagree with all of these contentions, for they invite the court to legislate. In view of the plethora of cases in which the word "building" has been construed, the difficulty which this everyday word, used in its "ordinary sense," has caused does not escape us.[11] However, we are uncomfortable with the division's memorandum in that tests as to whether a building is "significant" or "incidental" may promote the type of subjective judgments by awarding authorities that the comprehensive legislative scheme embodied in G.L.c. 149, §§ 44A-44H, was intended to prevent.[12] We think clarification of this issue is a matter for the Legislature, and we note that the subject of fair bidding procedures is one which is receiving ongoing legislative attention. See 1983 House Doc. No. 6450. We have previously noted that statutes *840 must be interpreted as enacted and statutory omissions cannot be supplied by the court. See Pacella v. Metropolitan Dist. Comm'n, 339 Mass. 338, 342 (1959).
6. Substantial statutory compliance. Lowell and Gioioso argue that if this court were to hold, as it does, that c. 149 should be applied to this project, then rebidding is still unnecessary in view of Lowell's substantial compliance with statutory requirements. They point to Lowell's consulting engineer's verification of Gioioso's qualifications as support for the proposition that the contract award will in fact go to the lowest responsible and eligible bidder, thereby fulfilling the legislative purpose of c. 149. We cannot agree. We have repeatedly stated that the purpose of competitive bidding statutes is not only to ensure that the awarding authority obtain the lowest price among responsible contractors, but also to establish an open and honest procedure for competition for public contracts. James J. Welch & Co. v. Deputy Comm'r of Capital Planning & Operations, 387 Mass. 662, 666 (1982). Toward those ends, these statutes are to be construed strictly. Poorvu Constr. Co. v. Nelson Elec. Co., 335 Mass. 545, 552 (1957). We have distinguished matters of substance, requiring strict compliance, and matters of formality, which may be corrected without harm to statutory design. Gil-Bern Constr. Corp. v. Brockton, 353 Mass. 503, 505-506 (1968). Bidder prequalification is no mere formality; it is a cornerstone of the competitive bidding statute. The good faith of Lowell is insufficient to overcome this substantial deviation from the statutory requirement. Sweezey v. Mayor of Malden, 273 Mass. 536, 540 (1931). Morse v. Boston, 253 Mass. 247, 254 (1925).
The interlocutory order on the preliminary injunction is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.
So ordered.
NOTES
[1] P. Gioioso & Sons, Inc. Although the Department of Labor and Industries (department) was named as a defendant in Modern Continental's complaint, it does not appear that service of process was made on the department. The department has not participated in the consideration of the matter before this court.
[2] The project, formally designated Regional and Municipal Interceptor, Project No. 3, Contract No. 17, is intended to alleviate sources of serious water pollution in the Merrimack River.
[3] We thank the Inspector General of the Commonwealth, Associated Subcontractors of Massachusetts, and Utility Contractors Association of New England, who have submitted briefs as amici curiae.
[4] Sections 44J-44L have been struck as a result of legislative revision. St. 1980, c. 579, § 55.
[5] General Laws c. 149, §§ 44A-44L, were extensively revised by the Legislature in 1980. The legislative enactment, "An Act to improve the system of public construction in the commonwealth," states as its purpose the provision of a system of public construction which reflects fair costs, professionalism, and accountability, and which "reduces opportunities for corruption, favoritism, and political influence in the award and administration of public contracts." St. 1980, c. 579, § 55. To that end, G.L.c. 149, § 44A (2), requires that "every contract for the construction ... of any building by a public agency estimated to cost more than five thousand dollars shall be awarded to the lowest responsible and eligible general bidder on the basis of competitive bids in accordance with the procedure set forth in the provisions of section forty-four A through H, inclusive, of this chapter" (emphasis added). Section 44D of c. 149 requires bidders to submit prequalification statements to the awarding authority (unless the bidder has filed such a statement with the authority or the division of capital planning and operations [division] within the previous year) along with applications to bid. G.L.c. 149, § 44D (1). The prequalification statement serves to certify the bidder's financial status, experience, and other information related to qualifications and responsibility. G.L.c. 149, § 44D (1) (a). The awarding authority (or the division) is charged with evaluating and rating all prequalification statements, and causing the publication of names of eligible bidders. G.L.c. 149, § 44D (3). After this process is completed, general bids may be submitted by prequalified bidders only. G.L.c. 149, § 44D (3), (4).

In addition to the above procedure, G.L.c. 149, § 44F, requires submission of subbids for specified subtrades on all building contracts subject to G.L.c. 149, § 44A.
[6] General Laws c. 30, § 39M (a), as amended through St. 1977, c. 970, § 1, requires that "every contract for the construction ... of any public work ... by the commonwealth, or political subdivision thereof ... estimated ... to cost more than five thousand dollars ... shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids...." Section 39M (a) specifically states that its provisions are not applicable to contracts subject to G.L.c. 149, §§ 44A-44H.

Clearly, the policy directives reflected in requiring contract awards to be made to the "lowest responsible and eligible" bidders are the same in G.L.c. 30, § 39M, and G.L.c. 149, § 44A (2). However, G.L.c. 30, § 39M, does not require bidder prequalification. Additionally, separately filed subbids are not required in bidding under G.L.c. 30, § 39M.
A further significant difference between the statutes is that G.L.c. 30, § 39M, concerns "public work[s]" and G.L.c. 149, §§ 44A-44H, are directed toward "any building by a public agency."
[7] The department is responsible for enforcing the provisions of G.L.c. 149, §§ 44A-44H. G.L.c. 149, §§ 44H. The Commissioner of the department has "all necessary powers" to compel compliance with c. 149, §§ 44A-44H, including prosecutorial power. Id.
[8] The division, created by St. 1980, c. 579, has broad supervisory powers concerning capital facilities planning and building projects within the Commonwealth. G.L.c. 7, § 39A. In 1982, a deputy commissioner of the division issued a memorandum concerning determinations by contract awarding authorities to proceed according to G.L.c. 149, §§ 44A-44H, or to utilize G.L.c. 30, § 39M, involving less administrative complexity. The division took the position that the "technical nature" of a given project would dictate the applicable statute. Contracts for "buildings" costing more than $5,000 require prequalification under G.L.c. 149, § 44D; contracts for any "public work" not involving buildings or costing less than $5,000 may be bid under G.L.c. 30, § 39M. According to the division, the determination whether a project involves a "building" is the critical first choice in assessing the proper bidding procedure. Where projects may be of a mixed nature, the division distinguished building work which is "significant," thereby requiring implementation of c. 149 procedures, from that which is "incidental." "Incidental" building work, involving a small cost in proportion to an entire project, could be bid under G.L.c. 30, § 39M. Recognizing that many projects might not lend themselves to clear distinctions, the division advised awarding authorities that they were free to choose whichever statute reasonably related to the practical criteria they suggested. The division's memorandum effectively restates the advice of an earlier opinion of the Attorney General, wherein employee maintenance facilities budgeted at two to four percent of an entire dam project were considered insufficient to require characterization of the project as one for public buildings. Rep. A.G., Pub. Doc. No. 12, at 151 (1963).
[9] In Quincy Ornamental Iron Works, Inc. v. Findlen, supra at 87, this court stated: "It is well established that a bidder on a contract governed by G.L.c. 149, §§ 44A-44L, has standing to challenge the compliance of the awarding authority with the requirements of those sections." There is no question but that Modern Continental in fact was a bidder on the Lowell project. This court does not wish to encourage the litigation of petty grievances by disappointed bidders; however, the tradition of according standing so long as a project bid has been submitted has strong support in our case law. See Datatrol Inc. v. State Purchasing Agent, 379 Mass. 679, 690 (1980), and cases cited; Interstate Eng'g Corp. v. Fitchburg, 367 Mass. 751, 755-756 n. 6 (1975); Industrial Eng'g & Metal Fabricators, Inc. v. Poorvu Constr. Co., 354 Mass. 287, 290 (1968).
[10] General Laws c. 149, § 44D, provides in part: "No ... entity may bid on a general contract subject to the provisions of [section] forty-four A unless s/he shall furnish to the awarding authority ... (i) a prequalification statement, unless such ... entity has filed a prequalification statement under the same name with any awarding authority subject to the aforesaid provisions or with the division of capital planning and operations within the past twelve months ..." (emphasis added). Gioioso's affidavit indicates it had been prequalified by Lowell within the year prior to the department's decision. We fail to see any additional burden on Gioioso resulting from requiring prequalification.
[11] See, e.g., Deary v. Dudley, 343 Mass. 192, 194 (1961) (sewer not a building); James Constr. Co. v. Commissioner of Pub. Health, 336 Mass. 143, 147 (1957) (whether sewage treatment plant a building not decided); Wilbur v. Newton, 307 Mass. 191, 194 (1940) (sand hopper a building); Cochran v. Roemer, 287 Mass. 500, 509-510 (1934) (coal elevator "silos" are buildings); Jenney v. Hynes, 282 Mass. 182, 190 (1933) (gas station a building), S.C., 285 Mass. 332, 335 (1934) (building need not be ground surface structure; walls and fences not buildings); Reardon v. Murphy, 163 Mass. 501, 501 (1895), and cases cited (piazza a building; coal bin structure a building; pavilion a building); Nowell v. Boston Academy of Notre Dame, 130 Mass. 209, 210 (1881) (brick wall not a building).
[12] Neither do we believe a "percentage" test has utility, although such a rule has been suggested. Rep. A.G. Pub. Doc. No. 12, at 151-152 (1963). There the Attorney General declined to adopt a rigid view of the word "building," stating that a structure which cost only two to four percent of an entire project was merely an appurtenance, and did not necessitate application of c. 149 procedures. The difficulty with such an approach is readily apparent upon examination of the parties' representations in this case. In Gioioso's view, the pumping station cost represents eight per cent of the total bid; Modern Continental, however, calculates that the pumping station involves thirty-five percent of the project. Mathematical peregrinations of this sort could only breed further litigation.