SUPERIOR COURT 
 
 MIG CORPORATION, INC. and SPS NEW ENGLAND, INC.; UTILITY CONTRACTORS ASSOCIATION OF NEW ENGLAND, INC. and ASSOCIATED BUILDERS AND CONTRACTORS, MASSACHUSETTS CHAPTER, INC. Vs. MASSACHUSETTS DEPARTMENT OF TRANSPORTATION

 
 Docket:
 2014-01456
 
 
 Dates:
 October 10, 2014
 
 
 Present:
 Mary K. Ames Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
 
 

 INTRODUCTION
The plaintiff, MIG Corporation, Inc. ("MIG") brought this action against the Massachusetts Department of Transportation ("MassDOT"), seeking to enjoin MassDOT from rebidding the "Scheduled and Emergency Structural Repairs at Various Locations in District 2" contract for railroad highway bridge maintenance and emergency repair ("the Contract"). MassDOT rejected the bid of SPS New England, Inc. ("SPS"), the lowest bidder. MIG, the next lowest bidder would be awarded the bid unless the contract was rebid. SPS filed a bid protest after MassDOT rejected its bid. The Commonwealth of Massachusetts, Office of the Attorney General's Bid Protest Unit ("AGO") rendered its non-binding decision.  Thereafter, MIG brought this action seeking to enjoin MassDOT from rebidding the Contract. SPS, Utility Contractors

-1-

Association of New England, Inc., ("UCANE"), and Associated Builders and Contractors, Massachusetts Chapter, Inc., ("ABC"), (collectively the "Intervenor Plaintiffs") filed an intervenor complaint to enforce their rights and interests to compel MassDOT to rebid the contract in accordance with the AGO's bid protest decision issued on April 18, 2014, and revised on May 13, 2014. This matter is now before the court on plaintiff MIG's motion for a preliminary injunction, pursuant to Mass. R. Civ. P. 65(b), and on the Intervenor Plaintiffs' motion for a preliminary injunction, pursuant to Mass. R. Civ. P. 65(b). For the reasons discussed herein, the plaintiff MIG's motion is ALLOWED and the Intervenor Plaintiffs' motion is DENIED.
BACKGROUND
Plaintiff, MIG Corporation, Inc. is a Connecticut corporation with a principal place of business at 1 Acton Place, Suite 200, Acton, Massachusetts. MIG is engaged in the business of heavy highway and bridge construction. Intervenor SPS is a Massachusetts corporation with a principal place of business at 98 Elm Street, Salisbury, Massachusetts. SPS is also engaged in the business of heavy highway and bridge construction. Intervenor UCANE is an association comprised of over 250 contractors and associated businesses who perform underground utility construction as well as bridge and highway work for MassDOT. ABC is the largest construction trade association in Massachusetts with a principal office at 100 Unicom Park Drive, Woburn, Massachusetts. Many of ABC's members bid for and perform work under public contracts in Massachusetts including bridge and highway work for MassDOT. Defendant MassDOT is a Massachusetts state agency with a principal place of business at 10 Park Plaza, Suite 1460, Boston, Massachusetts. MassDOT is the awarding authority for the Contract.

-2-

On or about October 15, 2013, MassDOT issued a bid solicitation for a two-year contract for scheduled and emergency structural bridge repairs in District Two, which includes Springfield, as well as the cities and towns north of Springfield in Hampden, Hampshire, Franklin, and Worcester counties to the Vermont border. The bid solicitation was governed by G. L. c. 30, § 39M, which requires that the Contract be awarded to the "lowest responsible and eligible bidder" and that the specifications be written for "full competition."
The Contract was divided into two projects or scopes of work under a single bidding format. First, with respect to the 400+ roadway bridges in District Two, the Contract required the contractor to be "on call" to perform emergency and non-emergency repairs as needed.
Second, the Contract required the contractor to perform structural repairs on eight named commuter railroad bridges as part of a federally funded project to restore intercity train service throughout western Massachusetts.
Rather than provide separate estimated quantities for the work under each project, the Contract was structured as a so-called unit price contract. Thus, in responding to the bid solicitation, bidders were required to submit unit prices for specific "work-items" for which MassDOT provided individual quantity estimates. The "work items" were not segregated between the "on-call" repairs on the roadway bridges and the structural repairs on the commuter rail bridges. MassDOT estimated a total value for the Contract of $6,017,420. Of this amount, $30,000 was estimated for the contractor's Mobilization costs and $1,564,510 was estimated for the cleaning and painting of bridges, based on an estimate of $100 per sq. ft.
The Specifications and Supplemental Specifications for Highways and Bridges included several requirements for bidders to meet in order for their bids to be considered by MassDOT. Specifically, Supplemental Specifications Section 748.20 provided that "[t]he unit bid price for

-3-

Mobilization shall not exceed 3% of the contract bid in total, exclusive of that item. Failure to observe this requirement may result in the rejection of the bid." Additionally, Section 2.09 of the Supplemental Specifications provided that any proposals "which contain abnormally high or abnormally low prices for any class or item of work, may be declared informal" and rejected.
Approximately two months prior to the bid solicitation, MassDOT developed a comprehensive list of 20 work items and an estimated quantity of work for each work item for structural repairs to the eight commuter railroad bridges. MassDOT also developed estimated quantities for the work items for the "on call" work on the roadway bridges. According to MassDOT' s internal estimate, the quantities of work required for the 20 work items for the structural repairs to the eight commuter rail bridges had a value of $4,259,350. MassDOT did not disclose to bidders the 20 work items applicable to the eight commuter rail bridges or the estimated quantities and contract values for each work item. The structural repair work on the eight commuter rail bridges constituted 70% of the work on the Contract according to MassDOT's internal estimate.
On January 22, 2014, MassDOT opened the bids. SPS was the lowest bidder at $5,378,821 and MIG was the second lowest bidder at $5,455,734. Upon its review of the bids pursuant to G. L. c. 30, § 39M, MassDOT requested justification from SPS for SPS's bid price of $1,270,000 for Mobilization, which significantly exceeded MassDOT's estimate of $30,000, and SPS's bid price of $.01/sq. ft ($120 total) for "Clean [Full Remove] & Paint - Structured Steel"), which was significantly below MassDOT's estimate of $100/sq. ft ($1,564,510 total). SPS responded that the two items in question must be viewed in concert and that its Mobilization bid was higher than MassDOT's estimate because SPS included not only its Mobilization costs, but

-4-

also the Mobilization costs of its painting subcontractors and fixed costs and other quantities of costs where the scope of work was unknown at the time of bid.
On February 25, 2014, MassDOT notified SPS that MassDOT had rejected SPS's bid because it did not comply with the bid solicitation requirement that the price for Mobilization not exceed 3% of the overall Contract price. Additionally, MassDOT found SPS's bid to be both mathematically and materially unbalanced because it shifted the cost of work items to the Mobilization item, which committed MassDOT to pay for work even if it was not required.
MassDOT determined that the bid of the second lowest bidder, MIG, was a qualified bid and that it would award the contract to MIG.
On March 19, 2014, SPS filed with the AGO's Bid Protest Unit a protest from MassDOT' s decision to reject SPS's bid. In its bid protest, SPS argued that MassDOT violated the bidding laws by failing to provide all bidders with its estimated quantities of the work items it had prepared for the structural repairs on the eight commuter rail bridges. Additionally, SPS asserted that its bid was not both mathematically and materially unbalanced, and that it was entitled to an award of the Contract.
The AGO conducted an investigation of the bid solicitation, in accordance with G. L. c. 149, § 44H, that included the submission of written position statements by SPS, MassDOT, and MIG, and a hearing at which SPS, MassDOT, and MIG presented arguments and evidence. On April 18, 2014, and in a revised decision on May 13, 2014, the AGO upheld SPS's bid protest, finding that MassDOT violated the bidding laws by failing to provide bidders with all the material information in its possession regarding the scope and quantity of the work at the eight commuter railroad bridges.

-5-

On May 2, 2014, MIG initiated this action seeking a preliminary injunction prohibiting MassDOT from rebidding the Contract. On May 13, 2013, SPS, UCANE and ABC moved to intervene in this action and filed an intervnor-complaint seeking, among other things, a declaratory judgment that MassDOT violated the public bidding laws in the initial procurement, and injunctive relief prohibiting MassDOT from awarding the Contract to MIG. The Intervenor Plaintiffs argue that rebidding of the Contract with specifications that include MassDOT' s internal estimates regarding the estimated quantity of work for each of the 20 work items for the commuter rail bridges is necessary in order to remedy MassDOT' s statutory violation.
DISCUSSION
I. Standard of Review
To prevail on its request for a preliminary injunction, the plaintiff must show a strong likelihood of success on the merits of its claims, that it will suffer irreparable harm without the requested injunctive relief and that its harm, without the injunction, outweighs any harm to the defendants from being enjoined. GTE Prods. Corp. v. Stewart, 414 Mass. 721, 722-723 (1993). See also Planned Parenthood League of Mass., Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-617 (1980). Additionally, because the plaintiff seeks to enjoin an action by the government, the court must determine whether the requested order promotes the public interest or if the relief sought will not adversely affect the public. Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
II. Likelihood of Success on the Merits
MIG argues that it has shown a sufficient likelihood of success on the merits on its claim that MassDOT' s bid solicitation complied with the public bidding statute to warrant allowance of

-6-

its requested injunctive relief. SPS opposes the injunction and argues that this court should uphold the AGO's bid protest decision, which found that MassDOT violated the public bidding laws by failing to disclose its internal breakdown of certain work items related to painting the eight commuter rail bridges.[1]
Pursuant to G. L. c. 30, § 39M, all contracts for public works are required to be "awarded to the lowest responsible and eligible bidder." G. L. c. 30, § 39M. The purpose of G. L. c. 30, § 39M is to ensure that the awarding authority obtains the lowest price among reasonable contractors and to establish an open and honest procedure for competition with all bidders on an equal footing. Brasi Dev. Corp., 456 Mass. at 690; Modern Cont'/ Constr. Co. v. City of Lowell, 391 Mass. 829, 840 (1984). Awarding authorities, such as MassDOT, enter into an implied contract with all bidders that they will abide by the conditions stated in the bid documents and will conduct their bid review fairly and honestly. See Cataldo Ambulance Serv., Inc. v. City of Chelsea, 426 Mass. 383, 388-389 (1998). However, awarding authorities have discretion to accept or reject bids that deviate from a requirement imposed by their own bidding specifications. Peabody Constr. Co. v. Boston, 28 Mass. App. Ct. 100, 103-104 (1989).
Relying on Sweezey v. City of Malden, 273 Mass. 536,540 (1931), the AGO decision adopted SPS's argument that the failure to supply the breakdown between painting work on the railroad bridges and highway bridges resulted in a violation of the bidding statute. Specifically, the AGO decision found that the bid solicitation's failure to provide all of the information known to MassDOT prior to the award of the contract violated Sweezey's holding that the "quantity and

----------------------------------------

[1] The court notes at the outset that the Attorney General has no rulemaking authority with respect to the competitive bidding statute and no broad discretion in issuing enforcement decisions. Brasi Dev. Corp. v. Attorney Gen., 456 Mass. 684,694 (2010).

-7-

quality of work" must be provided with "as much certainty and definiteness as possible." 273 Mass. at 540.
This court does not agree. In Sweezey, the awarding authority required all bidders to

submit specifications for the composition and manner of laying the wearing surface as part of their respective bids for a paving contract.  273 Mass. at 539.  The Supreme Judicial Court found that by allowing the bidders to furnish their own specifications for any material part of the contract, the awarding authority failed to prepare the type of definite, detailed and proper specifications that would ensure fairness in the bidding process. Id. at 542 ("To allow a bidder to furnish his own specifications for any material part of the contract in question would destroy genuine and fair competition and be subversive of the public interests."). Thus, the SJC determined that the bid solicitation was invalid because its failure to state the "quantity and quality of the work required with as much certainty and definiteness as may be practicable" allowed for too much subjectivity and would result in no real competition between the bidders. Id. at 540-542 ("Every bidder must be able to know what materials are to be furnished and what work is to be performed in order to comply with the contract.").
However, contrary to the position set forth by the Intervenor Plaintiffs, neither the bidding statute nor the Sweezey decision obligate an awarding authority to provide "all" information in its possession that shows how it derived its estimated quantities. See G. L. c. 30,
§ 39M (providing that "[s]pecifications ... shall be written to provide for full competition for each item of material to be furnished under the contract"); Sweezey, 273 Mass. at 540 (requiring quality and quantity of work be stated with as much certainty and definiteness as may be practicable). Unlike in Sweezey where the bid specification failed to provide sufficient information on the type of road surface to be supplied and the manner of laying the wearing

-8-

surface, here MassDOT's bid solicitation clearly defined and detailed the scope of work for the Painting and Mobilization items. 273 Mass. at 539. There was nothing "indefinite" about the work to be performed because the bid solicitation provided all of the information necessary to enable prospective bidders to prepare their bids. In fact, all three of the other bidders were able to evaluate the scope of the work based on the specifications provided in the bid solicitation and submitted bids either just below or just above MassDOT' s estimate of$ 100 per sq. ft. for the Painting item. Thus, because the public bidding laws do not require an awarding authority to provide "all" of the information in its possession to show how it arrived at its derived estimates, it is likely that MIG will prevail on its claim that MassDOT' s bid soliciation did not violate the public bidding laws. Modern Cont'/ Constr. Co., 391 Mass. at 840 (public bidding statute is to be strictly construed).
Additionally, MIG has demonstrated sufficient likelihood of success on the merits of its claim that it was proper for MassDOT to reject SPS's bid. Here, all bidders were on notice that exceeding the 3% limit for Mobilization could result in rejection of the bid. SPS's bid price for Mobilization was $1,270,000 or 31% of the bid total excluding the item. Because SPS significantly exceeded the 3% limit for the Mobilization item, MassDOT's exercise of its discretion to reject SPS's bid was appropriate and expressly permitted by the Contract specifications. Peabody Constr. Co., 28 Mass. App. Ct. at 104.
Moreover, it was proper for MassDOT to reject SPS's bid after recognizing that SPS's materially and mathematically unbalanced bid could be harmful to the Commonwealth. An unbalanced bid is one that contains an abnormally low price for one item and an abnormally high price for another item in order to recoup losses from the abnormally low price. Department of Labor and Indus. v. Boston Water and Sewer Comm'n, 18 Mass. App. Ct. 621, 622 n.3 (1984).

-9-

SPS's bid was mathematically unbalanced because it shifted costs from the Painting item to the Mobilization item and it was materially unbalanced because it created reasonable doubt as to whether it would result in the lowest cost for scheduled and emergency repair work.
Specifically, SPS's bid would ensure itself a minimum payment of $1,270,000 regardless of the Painting work actually performed under the contract because the Mobilization item is paid in full regardless of the work completed under the contract. By shifting the costs of Painting to the Mobilization item, SPS severely reduced the amount of money available for bridge repairs, which raised reasonable doubt that awarding the contract to SPS would result in the lowest ultimate cost to MassDOT. This court finds that it was proper for MassDOT to reject SPS's bid because it was both mathematically and materially unbalanced. This court finds that the actions of MassDOT were neither arbitrary nor capricious nor in any fashion illegal.
III. Irreparable Harm
Finally, the court must consider whether MIG has demonstrated that it will suffer irreparable harm in the absence of a preliminary injunction. "In the absence of bad faith, a bidder wrongfully deprived of a contract may recover only his bid preparation costs." Peabody Constr. Co., 28 Mass. App. Ct. at 105. Massachusetts courts have long recognized that an unsuccessful bidder will suffer irreparable harm if a public contract is ordered rebid when a bidder deserves the right to the contract. Petricca, 37 Mass. App. Ct. at 399 n.4 ("If the plaintiff is entitled to the contract at its original bid price, that it can win the contract at a different bid price would only alter its vested rights to profit under the first bid."). Here, MIG has demonstrated that, in the absence of an injunction, it will have forever lost its opportunity to perform the Contract work and profit from the job according to the bid it submitted in

-10-

compliance with the laws of the Commonwealth. Modern Cont'[ Constr. Co., 391 Mass. at 838. Additionally, a weighing of the harms analysis favors allowing the injunction because rebidding only benefits SPS by providing it with a second opportunity to bid the contract, despite originally submitting a non-conforming bid. Finally, MassDOT will not be harmed from allowing an injunction. Rather, MassDOT and the public will benefit from allowing the injunction because the railroad bridge repair work will not be delayed by forcing all of the parties to undergo the time consuming rebidding process.
ORDER
For the foregoing reasons, it is hereby ORDERED that MIG Corporation's Motion for a Preliminary Injunction is ALLOWED and SPS New England, Inc., Utility Contractors Association of New England, Inc. and Associated Builders and Contractors, Massachusetts Chapter, Inc.'s Motion for a Preliminary Injunction is DENIED.

@/s/Mary K. Ames Justice of the Superior Court

@October 10, 2014

-11-