PEABODY CONSTRUCTION CO., INC. *vs.* CITY OF BOSTON &
another.[1]

No. 89-P-866.

Suffolk. September 18, 1989. - November 27, 1989.

Present: KASS, CUTTER, & SMITH, JJ.

*Injunction. Practice, Civil,* Interlocutory appeal, Appeal, Judicial discretion. *Contract,* Bidding for contract. *Municipal Corporations,* Contracts. *Statute,* Construction. *Damages,* Loss of profits.

The city of Boston had discretion under G. L. c. 149, §§ 44A-44J, to reject a construction contract bid that did not comply with nonstatutory requirements imposed by the city's bidding documents, with the result that a Superior Court judge could properly have concluded, in denying a request for a preliminary injunction, that the rejected bidder had not demonstrated either a likelihood of success on the merits or a substantial risk of irreparable harm. [103-106] CUTTER, J., concurring. KASS, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on June 12, 1989.

A motion for a preliminary injunction was heard by *Barbara A. Dortch,* J.

*Sally A. Corwin (Joseph M. Corwin* with her) for the plaintiff.

*Patrick J. Costello,* Assistant Corporation Counsel, for the city of Boston.

*John J. Spignesi* for Sciaba Construction Corp.

SMITH, J. Peabody Construction Co., Inc. (Peabody), brought an action in the Superior Court against the city of Boston (city) and Sciaba Construction Corporation (Sciaba). The verified complaint alleged that the city improperly rejected its general bid on renovations to Boston Latin Acad-

---

[1]Sciaba Construction Corporation.

emy (the project). The complaint sought both declaratory and injunctive relief.

On June 20, 1989, a hearing was held before a Superior Court judge upon Peabody's application for a preliminary injunction to enjoin the city and Sciaba from proceeding with a contract awarded to Sciaba for the project. The judge denied the application, and Peabody sought relief in this court pursuant to the first paragraph of G. L. c. 231, § 118. A single justice denied the petition but directed that the appeal be expedited pursuant to the second paragraph of G. L. c. 231, § 118. We find no error.

The facts are not in dispute. The city requires successful general bidders for its projects to demonstrate, at the time of the bid, that they have set aside specified portions of the contract work for performance by qualified minority and women business enterprises. The city's office of minority/women business reviews the qualifications of potential minority and women businesses and is solely responsible for certifying those firms before they become eligible for participation. The names of the certified minority and women-owned firms are included in a city directory and made available to all prospective bidders. If a general bidder intends to use a minority or women-owned business not certified by the city, then a copy of the most recent letter of certification from the State Office of Minority and Women Business Assistance (SOMWBA) (if the business is so certified) *and* an application for certification completed by the noncertified business must accompany the general bid form at the time of the bid.

On April 14, 1989, the city invited sealed bids for the project. All the bids were subject to G. L. c. 149, §§ 44A-44J. The city provided each interested general bidder with a set of bid documents. The documents included the following language:

> "No bid for the award of this project will be considered acceptable unless the general contractor complies fully with the following requirements for Minority/ Women Business Enterprise Utilization."

. . . .

"In the event that the bidder selects a minority/or women business that is not included in the . . . Directory . . ., then a Certification Application completed by the non-certified business must be filed with the bid proposal. . . ."

. . . .

"If the [city] . . . finds that . . . these procedures require the submission of special data to accompany the bid, and the bidder failed to submit such data, then the [city] reserves the right to rule the . . . failure to submit such data an informality and to receive said data from the bidder or the [minority business] within a period of five [5] days from the date of selection of the general contractor . . . ."

Peabody's bid, the lowest, was $10,879,000 followed by Suffolk Construction Corporation (Suffolk) at $11,243,200, and Sciaba at $11,582,200. Peabody's general bid listed K & R Construction, Inc. (K & R), a minority business, as a subcontractor to provide earthwork, demolition, site improvements, concrete forms, and carpentry on the project. K & R was certified as a minority business by SOMWBA but not so certified by the city, and, therefore, its name did not appear in the directory. Peabody's bid was not accompanied by either a letter of certification of K & R by SOMWBA, or by an application, completed by K & R, for certification by the city. Sciaba filed a protest with the city contesting the validity of Peabody's bid. On May 26, 1989, the day after the bid opening, the city notified Peabody that it was rejecting its bid because K & R was not certified by the city and no certification application had been filed with the bid.[2] On the same day, the city received from Peabody a completed application for certification of K & R by the city. On June 12, 1989, the city and Sciaba executed a contract for the project.[3] The

---

[2]The city had rejected a general bid by Sciaba in connection with another project for the same reason it rejected Peabody's bid.

[3]K & R was also listed as a minority subcontractor under Suffolk's general bid. Suffolk, like Peabody, failed to include with its bid a letter of certification from SOMWBA for K & R and a completed application for

contract called for completion of the project by September 1990.

The granting or denying of an application for a preliminary injunction "generally rests within the sound discretion of the judge . . . , after a combined evaluation of the moving party's likelihood of success on the merits, its claim of injury, and finally, a balancing of the competing harms to each party." *General Acc. Ins. Co.* v. *Bank of New England-West, N.A.*, 403 Mass. 473, 475 (1988). See also *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 615 (1980). "[I]n assessing whether a judge erred in granting or denying a request for preliminary injunctive relief, we must look to the same factors properly considered by the judge in the first instance." *Cheney*, *supra* at 615-616.

Peabody argues that the city was compelled to exercise its right to treat Peabody's omission to accompany its low bid with a completed application for certification by K & R as an informality unless there was a solid reason not to do so. None, Peabody contends, has been advanced. Therefore, according to Peabody, it follows that the failure of the motion judge to grant a preliminary injunction was an abuse of discretion.

The role of an awarding authority in considering bids filed pursuant to G. L. c. 149, §§ 44A-44J, is clear. If a bid violates a statutory requirement in matters of substance the bid must be rejected by the authority. *Gil-Bern Constr. Corp.* v. *Brockton*, 353 Mass. 503, 505-506 (1968). *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 692 (1982). In such circumstances the authority lacks discretion in the matter and must reject the bid "even where no harm to the public authority was shown (*Bowditch* v. *Superintendent of Sts. of Boston*, [168 Mass. 239,] 244 [1897]); where the violation benefited the public (*Grande & Son* v. *School Hous. Comm. of N. Reading*, 334 Mass. 252, 258 [1956]; *East Side Constr. Co.* v. *Adams*, 329 Mass. 347, 352

---

K & R's certification by the city. Sciaba protested Suffolk's bid on the same grounds that it protested Peabody's bid. The city rejected Suffolk's bid. Suffolk did not contest the city's action.

[1952]); and where there was no showing of bad faith or corruption (*Gifford* v. *Commissioner of Pub. Health*, 328 Mass. 608, 617 [1952])." *Phipps Prods. Corp.*, *supra*. If, however, the deviation from the statutory requirements is minor or trivial, the authority has discretion and may either accept or reject the bid. *Gil-Bern Constr. Corp.* v. *Brockton, supra* at 506.

In this case, the deviation was not from a statutory requisite but rather from a requirement imposed by the authority. In such instances, the authority has the discretion to accept or reject the bid. In *J.J.& V. Constr. Corp.* v. *Commissioner of Pub. Works of Fall River*, 5 Mass. App. Ct. 391 (1977), the awarding authority required bidders to include a "Certification of Bidder Regarding Equal Employment Opportunity" with their bids. The invitation for bids also stated that the authority could waive "any informalities." The low bidder failed to include the certificate but was awarded the contract by the authority. This court upheld the authority's decision as being within its discretion because there had not been a violation of any statute and this requirement was an informality which the authority had reserved the right to waive. Also see *Builders Realty Corp. of Mass.* v. *Newton*, 348 Mass. 64, 67 (1964), where the court recognized the right of an awarding authority to exercise its discretion to reject a low bidder because it failed to comply with a nonstatutory requirement.

Peabody claims that the city in its bidding documents made compliance with its minority business submission procedures, permissive rather than mandatory. It points to language, previously quoted, where the city reserved the right to rule a failure to submit "special data" an informality and to receive such data from a bidder within a period of five days from the selection of a general contractor. Peabody contends that a completed application for certification by a minority business was "special data" and that it filed such application within the time period specified by the city.

Assuming without deciding that Peabody's interpretation of the term "special data" is correct, the city retained the

right in the bidding documents to reject as nonresponsive a bid which did not comply with requirements set forth in the bidding documents. There does not appear to be any language in the cases which *compels* a city to treat an omission as an informality. The fact that Peabody was the lowest bidder by hundreds of thousands of dollars does not divest the city of its discretion in the matter.

Peabody also claims that the city's failure to include a "specific space" in its bid form for minority certification data precludes it from rejecting a bid based on the omission of a completed application form. It bases its argument on G. L. c. 149, § 44E(3), as appearing in St. 1980, c. 579, § 55, which provides that no general bidder "shall be rejected because of the failure to submit prices for, or information relating to, any item or items for which no specific space is provided in the bid form furnished by the awarding authority . . . ." There was no specific space in the bid form for minority certification data.

Peabody's interpretation of the word "item" to include data pertaining to minority or women business enterprises is incorrect. The word "item" as used in the statute refers to more technical matters such as costs, alternates, materials, supplies, and other matters common to the construction industry.

Based on the record the motion judge could properly have concluded that Peabody not only did not demonstrate a likelihood of success on the underlying merits, but also did not demonstrate a sufficient showing of irreparable harm. In regard to the latter, we note that in its brief, Peabody maintains that the city's action raises "a serious question . . . about fair dealing and good faith on [the city's part] . . . ." It has been held that, in the absence of bad faith, a bidder wrongfully deprived of a contract may recover only his bid preparation costs. *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.*, 3 Mass. App. Ct. 326, 333-335 (1975), *S.C.*, 371 Mass. 235, 243 (1976). However, if a bidder has complied with all requirements but is deprived of the contract through some conduct of the awarding authority tanta-

mount to bad faith, then the recovery of lost profits is the measure of damages. *Bradford & Bigelow, Inc.* v. *Commonwealth*, 24 Mass. App. Ct. 349, 359 (1987). It appears that Peabody is charging the city with bad faith in rejecting its bid. If proved at a trial on the merits, Peabody would be able to recover its lost profits. In the circumstances, therefore, the failure to grant the injunction would not subject Peabody to a substantial risk of irreparable harm.

For the above reasons we conclude that the motion judge did not abuse her discretion in denying Peabody's request for a preliminary injunction.

The order denying preliminary injunctive relief is affirmed.

*So ordered.*

CUTTER, J. (concurring). I agree with the foregoing decision of the precise question before us. It is premature now to decide, prior to a trial of the present case on the merits, whether, on the part of the city, there has been (a) a lack of good faith, or (b) an abuse of discretion, or (c) merely a difference of honest judgment in the award of the contract. After a trial, we will be in a better position to appraise the circumstances mentioned in the concurrence by Justice Kass, particularly the failure of the city (for what may prove to have been insubstantial reasons) to save the taxpayers a significant sum of money by awarding the contract to Peabody.

KASS, J. (concurring). One of the well worn cliches of judicial opinions is: "we are constrained." It fits here. Adherence to precedent and judicial restraint, sound orthodoxies both, compel the conclusion we have reached. The cases line up persuasively that public bidding authorities have discretion to waive or to count as disqualifying minor defects in bid responses. Courts, in general, should not second-guess the honest exercise of discretion by bidding authorities for the excellent reason that a bidding authority, which has access to trained personnel (e.g., its architect), is in a better position to

evaluate the significance of an apparently minor deviation than a judge is.

Nevertheless, in hope that it may provide guidance to bidding authorities about how they *ought* to exercise their discretion, I give voice to my concern that the city of Boston has acted with undue rigidity and perhaps without sufficient regard to the public interest — $703,200 worth of public interest (the difference between Peabody's bid and Sciaba's bid). If the minority contractor had never been certified as such, the deviation might have been regarded seriously as in some fashion undercutting the city's minority hiring program. Here, the contractor in question, K & R, had been certified as a minority contractor by the responsible State agency, SOMWBA. What needed to be done by K & R with the city of Boston was, at most, administrative routine. The missing piece of paper was filed with the city within twenty-four hours of the bid opening. There is no whisper that K & R was not certifiable by the city as a minority contractor. The absence of a readily available bit of backup information has not been shown to have any bearing on the integrity of the bid, its economic value, the soundness of the building to be done, or the social objectives of the city. We appreciate the city's concern that it had rejected (some months earlier) a low bid by Sciaba because of the same sort of bid defect; but it is questionable whether mere consistency — of which Emerson had harsh things to say 150 years ago — is a sound reason for so costly an exercise of judgment.