Plaintiff ASEC (a joint venture organized for the purpose of bidding on contracts associated with the Central Artery-Tunnel Project), seeks an injunction prohibiting the Massachusetts Highway Department from awarding a contract to the purported low bidder, CAB Garafolo C.T. Male, Inc. (“CAB”), on the grounds that CAB’s bid documents were falsified.[1] This matter was scheduled originally for a hearing on plaintiffs Motion for a Preliminary Injunction but, after testimony was received, was converted, by agreement of all counsel, into a final hearing on the merits.
Based upon all of the credible evidence, the Court makes the following findings, rulings and order for judgment.
In the instant case, Massachusetts Highway Department (“MHD”) sought bids for survey work[2] at the Central Artexy Project and bids were submitted in mid-August, 1995. CAB was low bidder at $7,086,332 and ASEC Corporation/Holden Engineering (“ASEC”) was the second low bidder at $7,307,818, a difference of approximately 3%. Although the bids are designed to be reliable estimates, final payment under an awarded contract is to be based upon the amount of time and equipment expended, as finally certified by the contractor who was awarded the bid.
Pursuant to MHD’s usual procedures, a number of notarized documents, including “Form C’s,” were required to be submitted as a part of the bid package. Form C’s are forms which are to be signed under oath before a notary by sub-contractors who certify that they are ready, willing and able to perform services for the bidder under the terms of the proposed contract, if the bid is approved by MHD.
In the instant bid package, CAB filed nine Form C’s, of which at least three contained forged signatures of the proposed survey party chiefs. When ASEC learned that two of the nine Form C’s submitted with CAB’s bid, those of James Noone and Michael Twohig, were not actually signed by Messrs. Twohig and Noone, but *605 had been forged, ASEC filed a bid protest. When confronted by Twohig and Noone at a hearing conducted by the Fair Labor and Business Practice Division of the Attorney General’s Office, Larry Shetler, a principal of CAB, admitted he had signed Twohig and Noone’s names.
At the agency hearing, Shetler also admitted that none of CAB’s bid documents were legally notarized, but, rather, after being signed, had been given to someone to be taken to a notary whose identity was unknown to him. At the trial, however, Shetler admitted that the signed documents were delivered to one of CAB’s employees to be delivered to a notary who is the employee’s sister-in-law.
At the agency hearing, Shetler claimed that Noone and Twohig had authorized him to sign their names, but this was denied by Noone and Twohig at the agency hearing. CAB also claimed that ASEC had itself forged signatures in its bid, which was immediately refuted by the testimony of the two people involved.
MHD initially took the position, in a letter dated September 11, 1995, that if Twohig or Noone were shown to have not signed their respective Form C’s, CAB’s bid would be rejected for violating the certification requirement that the bid was bona fide. After the conclusion of the second day of the agency hearings, however, wherein it was established that Shetler had signed Twohig and Noone’s names, and that none of CAB’s bid documents were legally notarized, MHD reversed itself, taking the position Shetler signed Twohig and Noone’s names believing he was authorized to do so based upon past practice and, alternatively, that only two Form C’s were invalidated, leaving CAB with seven, rather than the required eight required[3] which was a minor deviation which could be waived by MHD. It recommended an award to CAB.
At the trial, however, Shetler admitted that he had also signed a third Form C, that of Philips, without prior authorization and admitted that these three forms were the entirety of those forms for which he had been responsible, so that he could not vouch for the genuineness of any of the other Form C signatures (which had been procured or signed by CAB’s joint venturer, Garafolo). He admitted, moreover, that none of the Form C’s were actually signed before a notary public, but that all had been sent, as a package, to be notarized by an absent notary, who was a relative of a CAB employee.
An intent to deceive, moreover, is shown by the fact that the writing used by Shetler to sign the three forged names is markedly dissimilar, indicating an attempt to disguise the fact that a single individual had signed these three Form C’s.
At the trial, in addition to denying that they had ever authorized Shetler to sign their names, Twohig and Noone indicated they would not have signed the Form C’s on this bid even had they been asked, and testified that they had previously requested that Shetler desist from marling out even unsigned resumes containing their names, in connection with any CAB bid documents, as had been authorized at one time (in 1994).
The Court notes that the falsification of the signatures of Twohig, Noone and Phillips on the Form C’s also rendered fraudulent the “Registration Form B’s” contained in the bid package, wherein one Henry Stanley certified under oath that he would be responsible for survey parties under the direction of Phillips and Noone, and one Samuel A. White, Jr., certified under oath that he would be responsible for a survey party under the direction of Twohig. In short, not only three of the nine Form C’s but two of the three notarized Form B certification were shown to be false and misleading.
Massachusetts law requires that “any contract of the construction ... of any public work ... by the commonwealth . . . shall be awarded to the lowest responsible bidder on the basis of competitive bids publicly opened.” G.L.c. 30, §39M(a) (1994). “The term ‘lowest responsible bidder’ shall mean the bidder whose bid is the lowest of those bidders possessing the skill, abilfiy, and integrity necessary for faithful performance of the work . . .” G.L.c. 30, §39M(b) (1994). An awarding authority may reject any and all bids, if it is in the public interest to do so. G.L.c. 30, §39M(b) (1994). The statute requires the bidder to certify “under penalties of perjury that (the) bid is in all respects bona fide, fair and made without collusion or fraud with any other person.” Id.
The legislature enacted the bidding statutes “to establish an open and honest procedure for competition for public contracts,” Modern Continental Constr. Co. v. Lowell, 391 Mass. 829, 840 (1984), “to prevent favoritism, to secure honest bidding methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally.” Phipps Products Corp. v. Massachusetts Bay Transportation Auth., 387 Mass. 687, 691-92 (1982). To ensure that these goals are met, these statutes are to be strictly construed. Modern Continental, 391 Mass. at 840.
Courts have distinguished matters of substance and matters of formality. Id. at 840. Whether a deviation is considered one of substance or a minor technicality depends on whether invalidation is necessary to fulfill the legislative purpose, Phipps 387 Mass. at 692.
If a bid violates a statutory requirement in matters of substance[4] the bid must be rejected by the awarding authority. Gil-Bern Constr. Co. v. Brockton, 353 Mass. 503, 505-06 (1968). The authority lacks discretion in the matter and must reject the bid even where no harm to the public was shown, where the violation benefited the public, and where there was no showing of bad faith or corruption. Peabody Constr. Co. v. City of Boston, 28 Mass.App.Ct. 100, 103-04 (1989) (citation *606 omitted). Conversely, the awarding authority has discretion where there are merely minor or formal deviations'[5] from requirements and may either accept or reject the bid. Gil-Bern 353 Mass. at 506.
While the Courts have created this dichotomy, one rescript decision provides that “(t]o permit any deviation from the statutory requirements would undermine the legislative goal. . .. Thus, failure to follow the bidding procedure in any respect is fatal.” Majestic Radiator Enclosure Co., Inc. v. County Commissioner of Middlesex, 397 Mass. 1002, 1003 (1986). In agreement is J. D’Amico, Inc. v. Worcester, 19 Mass.App.Ct. 112, 115 (1984) (“the ‘minor or formal deviation’ exception to compliance with competitive bidding statutes does not generally apply to failure by a bidder to comply with a statutory requirement”), citing Phipps Prod. Co. v. Massachusetts Bay Transp. Auth., 387 Mass. 687, 691-92 (1982).
Here, the Bechtel Parsens representative, Robert Priestly, testified that a primary purpose of the requirement of Form C’s is to ensure that, when bids are considered, the bidder has lined up subcontractors available who are capable and qualified to do the required work at the estimated costs, i.e., that, if a bid were accepted, the bidder could get the work done by qualified persons who were actually willing and able to perform the work at a reasonable price. He further testified that the MHD would be required to rely on later certifications by a successful bidder, to effectuate payment after the work was actually performed under the contract.
The Court finds, based on the credible evidence, that CAB’s falsification of signatures and procurement of false notarizations on the bid documents was, under the circumstances, a matter of substance and not a mere “minor deviation” which could be waived by the MHD.
Here, there was much more than a negligent omission of a certification, as was the case in Peabody Construction Co. v. Boston, 28 Mass.App.Ct. 100 (1984) (where the court held that failure to provide certificate of a bidder’s minority status, which was not required by the statute, and where there was no showing of bad faith[6] might be waived as a formality). Here, false data was provided, over faked signatures which were then falsely notarized. The data involved here, moreover, was essential for MHD to determine the bidder’s ability to have the worked performed by reliable subcontractors at a reasonable cost. If more is needed, there was also here an intention to deceive, which also flies in the face of the statutoiy intention to assure the “integrity” of the bidder[7] and the bona Jideness of the bid.
CAB’s actions here completely subverted and made a mockery of the bid process, which was designed to assure that the contract would be awarded to a bona fide bidder, who had lined up sub-contractors able and willing to do the work. The deliberate falsification of the bid documents here (not to mention CAB’s later untrue allegations and contentions at the agency hearing), moreover, indicate a disdain for honesty and a complete lack of integrfiy. In these circumstances, the deficiencies in the bid documents violated G.L.c. 30, §39M(c)(l), which defines the lowest responsible eligible bidder as one “possessing the skill, ability and integrity necessary for the faithful performance of the work . . .” and c. 30, §39M, which requires that each bidder execute a certificate that the.bid is “in all respects bona fide, fair and made without collusion or fraud with any other person.”
ORDER
Judgment is to enter for the plaintiff, and defendant Massachusetts Highway Department is permanently enjoined from awarding Contract No. M025V to the intervenor, Cab-Garafalo-CT Male, Inc.

Both ASEC and CAB are qualified as minority-owned enterprises, which provides them with certain preferences in the bidding process over a non minority-owned enterprise.

A representative of Bechtel-Parsons, which oversees the entire construction project, testified that the survey work being bid upon entails the over-sight of the quality of the field survey work which will be conducted by employees of the various contractors on the job. The quality and integrity of the oversight work to be performed by the successful bidder may thus be crucial to the integrity of the entire project.

As noted, nine Form C’s are actually contained in the bid documents.

For examples of “matters of substance” see Gifford v. Commissioner of Pub. Health, 328 Mass. 608, 617 (1952) (general contractor included smaller sums for subcontractors than the subbids submitted); East Side Constr. Co. v. Adams, 329 Mass. 347, 350-351 (1952) (town cannot waive a failure to include a subbid where statute required bids to be for complete project as specified and include names of all subs); Grande & Son, Inc. v. School Housing Comm of No. Reading, 334 Mass. 252, 258 (1956) (subbid failed to comply with project specifications); J. D’Amico, Inc. v. Worcester, 19 Mass.App.Ct. 112, 115 (1984) (failure of bidder to make an adequate bid deposit was material deviation from bidding procedures); Modern Continental Constr. Co., Inc. v. City of Lowell 391 Mass. 829 (1984) (bidder prequalification required by G.L.c. 149, 44A-44H held not be a mere formality).

For examples of minor deviations see Gil-Bern Constr. Corp. v. City of Brockton, 353 Mass. 503, 506 (1968) (held that failure to supply graphic representation of construction progress inconsequential because it did not alter obligation to finish by certain date, and thus awarding authority could lawfully waive minor deviation); Peabody Constr. Co. v. City of Boston, 28 Mass.App.Ct. 100, 103 (1989) (awarding authority has discretion where deviation is not from statutory requirement, but from requirement imposed by the authority); J.J.&V. Constr. Co. v. Commissioner of Pub. Works of Fall River, 5 Mass.App.Ct. 391 (1977) (same reasoning); Scabia Constr. Co. v. City of Boston, 35 Mass.App.Ct. 181 (1993) (obvious clerical error that deceives no one does not require rejection of the bid).

he bidder was a minority contractor, and filed the certificate the following day.

The Court infers an intention to deceive not only from the unauthorized false signatures and certificates themselves, but also from the obviously different-appearing script used by Shetler in affixing the false signatures of Noone, Twohig and Phillips.