Lauriat, J.
Plaintiff Environmental Waste Technology, Inc. (“EWT’) seeks a preliminary injunction enjoining the defendant Massachusetts Highway Department (“MHD”) from entering into a contract with defendant GZA Geoenvironmental Technologies, Inc. (“GZA”) related to the Central Artery/Tunnel Project (“CA/T Project”). As the basis for its request for injunctive relief, EWT contends that awarding the contract in question to GZA would violate various statutory prohibitions against conflicts of interest in bidding for public works contracts. For the following reasons, the plaintiffs motion for preliminary injunction is ALLOWED.
BACKGROUND
In June 1995, the Commonwealth of Massachusetts, through the MHD, solicited bids for Project No. C25A2, entitled “Oil and Hazardous Materials Incident Response” (“C25A2”). The bids were solicited pursuant *136 to G.L.c. 30, §39M. C25A2 is one of a number of projects which comprise Boston’s federally funded CA/T Project. Seven bids were received for the C25A2 contract. EWT’s bid was $90,230 higher than GZA’s low bid. The estimated cost of the project was $5,000,000, although the actual bids were substantially below that figure.
The C25A2 contract requires the successful bidder to provide environmental emergency response services for unexpected discoveries of oil or hazardous materials, underground storage tanks or other environmental hazards not yet identified in the CA/T Project right-of-way. The C25A2 contractor must provide these services under the direction of the MHD’s management consultant for the CA/T Project, Bechtel/Parsons Brinkerhoff (“B/BP”). Camp, Dresser and McKee, Inc. (“CDM”) will provide direct oversight of the C25A2 services in the field.
Prior to the awarding of the C25A2 contract, a “Right-of-Way Assessment and Remediation Services” field investigation was conducted throughout the CA/T alignment by CDM under CA/T Project No. M025A (“M025A”). The C25A2 contract is derived from the activities undertaken under the general scope of the M025A contract. The purpose of the M025A field investigation was to identify contaminated soils within the CA/T Project right-of-way which require special handling and disposal as determined by the Massachusetts Department of Environmental Protection. Soils so identified are classified as “clearance soil” and removal of these soils is the responsibility of CA/T Project mainline contractors. The C25A2 contract does not cover the remediation of hazards identified through the M025A activities.
GZA, a consultant on at least seven CA/T Projects, performed several duties on the M025A project. Under the M025A contract, GZA, as a consultant to CDM, performed site reconnaissance, the monitoring of soil borings and groundwater wells, and the collection of soil and groundwater samples. GZA also prepared reports containing boring logs, details of monitoring well installation, and chain-of-custody records for samples delivered for analysis by others. The exact nature of the material and data collected and retained solely by GZA is unclear as the availability of the documentary information remains a point of contention between the parties.
Perceiving a conflict of interest on GZA’s'part in acting as a consultant on the M025A contract and then bidding on the C25A2 contract, EWT notified the MHD on several occasions of this potential bidding irregularify. The MHD, after conducting its own evaluation, concluded there was no conflict and expressed its willingness to award the contract to GZA. In response, EWT filed a bid protest with the Office of the Attorney General Fair Labor and Business Practices Division pursuant to G.L.c. 149, §44H. After a hearing, the Attorney General’s Office denied EWT’s bid protest on November 2, 1995.
On October 6 and 13, 1995, at approximately the same time as it was engaged in correspondence with the MHD with regard to the potential violation of public works bidding procedures, EWT made requests, pursuant to the Public Records Act (“PRA”), for certain documents related to or generated under the M025A contract. G.L.c. 66, §10. The requested materials included the boring logs and progress reports related to GZA’s work under the M025A contract. At the time of hearing, MHD had not complied with all of the PRA requests by EWT.
Upon receipt of the Attorney General’s decision and after failing to obtain the documents it requested, EWT filed this action for injunctive relief and a declaratory judgment against MHD and GZA for alleged violations of G.L.c. 268A, §l(q), G.L.c. 30, §39M, 23 C.F.R. §1.33, and G.L.c. 29, §8B & 29F, as well as an alleged failure to comply with the PRA. A hearing on EWTs motion for a preliminary injunction was held on November 16, 1995.
DISCUSSION
‘The issuance of a preliminary injunction generally rests within the sound discretion of the Judge, after a combined evaluation of the moving party’s likelihood of success on the merits, its claim of injury, and finally a balancing of the competing harms to each party.” General Accident Ins. Co. of America v. Bank of New England-West, N.A., 403 Mass. 473, 475 (1988), citing Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 615 (1980). “When the dispute is not between private parties, however, the court should also consider the risk of harm to the public interest.” Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).[1]
A preliminary injunction is a drastic remedy that the court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Wright & Miller, 11 Federal Practice & Procedure, §2948 (1973). If the moving party can demonstrate that an injunction is necessary to prevent irreparable harm to it and that granting an injunction poses no substantial risk of harm to the opposing party, a substantial possibility of success on the merits warrants issuing the injunction. Packaging Industries, 380 Mass. at 617 n.12.
I
“(I]n the absence of bad faith, a bidder wrongfully deprived of a contract may recover only his bid preparation costs.” Peabody Construction Co. v. Boston, 28 Mass.App.Ct. 100, 105 (1989), citing Paul Sardella Constr. Co. v. Braintree Hous. Auth., 371 Mass. 235, 243 (1976). Therefore, if the C25A2 contract is awarded to GZA, without rebidding or other reconsideration of the award, EWT’s opportunity “for consideration as a bidder would be forever lost, and its remedy at law for the damages incurred in preparing its bid falls far short of being the equivalent of the potential to win the contract.” Modern Continental Construction Co. v. Lowell, 391 Mass. 829, 837 (1984). Thus, for the purposes of this motion, the court ac *137 cepts EWT’s contention that it would suffer irreparable harm if the injunction it seeks is not granted.
II.
EWT further contends that it has a reasonable likelihood of prevailing on the merits of this case because GZA has violated, inter alia, the conflict of interest provisions of G.L.c. 268A, §l(q) and MHD, in turn, will violate G.L.c. 30, §39M by awarding the contract to an ineligible bidder.
As a threshold matter, the parties have offered conflicting interpretations as to whether the conflict of interest strictures of G.L.c. 268A, §l(q) apply to GZA. By a fair and reasonable reading of that statute, the prohibition against “contractors and their personnel” from bidding on projects for which they had previously performed “engineering and environmental analysis” is applicable to corporations. The corporation is the principal business form through which contractors operate. Chapter 268A does not define “contractor.”
Bidding on the C25A2 contract was conducted pursuant to G.L.c. 30, §39M. Section 39M mandates that “every contract for the construction, reconstruction, alteration, remodeling or repair of any public work ... by the Commonwealth or political sub-division thereof, . . . shall be awarded to the lowest responsible and eligible bidder..Chapter 30 explicitly includes a corporation in its definition of a “contractor.” G.L.c. 30, §39R; see also G.L.c. 29, §29F (defining the terms for debarment of contractors of public contracts, “contractor” includes “any natural person, business, partnership, [or] corporation”). As such, it is a reasonable and fair reading of the statute to conclude that the term “contractor,” for the purposes of G.L.c. 268A, § 1 (q), includes not only individuals but corporations. Therefore, the statutory conflicts-of-interest restraints on public works contractors apply to GZA.
The primary issue thus becomes whether GZA, in any one of its earlier CA/T project contracts, “participated in the engineering or environmental analysis” preparatory to the C25A2 contract sufficient to trigger the G.L.c. 268A, §l(q) prohibitions. Chapter 268A is aimed “as much to prevent giving the appearance of conflict as to suppress all tendency of wrongdoing.” Starr v. Board of Health of Clinton, 356 Mass. 426, 429 (1969), quoting Board of Selectmen of Avon v. Linder, 352 Mass. 581, 583 (1967). At this stage of the case, it is sufficient for the court to focus on one of GZA’s previous contracts on the CA/T project: the M025A contract.
For a contractor to “participate,” it must “participate in agency action or in a particular matter personally and substantially as a state, county or municipal employee, through approval, disapproval, decision, recommendation, the rendering of advice, investigation or otherwise.” G.L.c. 268A, §l(j). The responsibilities of GZA under the M025A contract certainly appears to have involved “investigation” adequate to impose the controls of G.L.c. 268A on conflicts of interest. Although the bulk of the analysis was performed by CDM, GZA engaged in the collection of materials relevant to the determination of potential environmental conditions requiring remediation. The collection of borings and the performance of H-Nu screening, for example, necessarily involved a certain level of analysis of the soil and the surrounding circumstances.
Whether the disputed contract is in fact “project-wide” as alleged by EWT, the environmental work performed by GZA under the M025A contract is sufficiently related to the C25A2 contract to suggest a conflict of interest in allowing GZA to bid on the C25A2 contract. The responsibilities of the contractor under C25A2 are inextricably connected to the earlier work performed by GZA under the M025A contract. GZA is in a much better position to have judged, prior to bidding, the sophistication and efficacy of the earlier investigation, particularly in light of the other bidding contractors’ lack of access to certain M025A documents and materials. As alleged by EWT and not disputed by MHD or GZA, not all of the materials generated by GZA’s efforts, in particular the boring logs and progress reports, were available to the other bidding contractors at the time of bidding. The court notes that even the present availability of those documents and materials remains in dispute between the parties.
Even if GZA did not in fact use or rely upon any withheld or generally unavailable information, the court, on the record before it, has no way of knowing whether other bidders would have reasonably done so. Because the contract was for the remediation of unexpectedly discovered hazardous materials, GZA’s knowledge of the soil composition could conceivably enlighten a bidder as to the nature and scope of the environmental remediation contract at issue here.
Therefore, based on the information currently before the court, EWT has a sufficient likelihood of success on the merits of its claims to warrant injunc-tive relief. This is not meant to penalize GZA for its “varying degree! ] of experience, ingenuity, or resources,” but rather to ensure that all parties are provided “the opportunity to bid in the same way, on the same information.” E.A. Berman Co. v. Marlborough, 11 Mass.App.Ct. 1009, 1010 (1981).
III.
On balance, the equities also favor EWT. The loss of profits under the disputed contract is a substantial harm which will befall EWT should this motion fail. EWT has taken several steps to avoid this pending injury. The record shows that EWT has been vigilant in its attempt to notify the MHD of potential conflict of interest in the awarding of the contract. In addition, the unrefuted difficulty that EWT has had in attempting to obtain information from the MHD which, ac *138 cording to the Attorney General’s opinion, was “public information and available to all bidders,” further supports EWT’s position. This is not, however, to ignore the need for a timely resolution of this case. As this case presents primarily an issue of statutory interpretation and its application to the instant facts, the court is satisfied that placing this case on track for an expedited determination of its merits is sufficient to minimize the harm to GZA or MHD caused by any delay in the awarding of the C25A2 contract.
IV.
Finally, the court concludes that the public interest favors the granting of EWT’s request for injunctive relief. “If a bid violates a statutory requirement in matters of substance the bid must be rejected by” MHD. Peabody Construction Co. v. Boston, 28 Mass.App.Ct. at 103, citing Dueling-Bern Constr. Corp. v. Brockton, 353 Mass. 503, 505-06 (1968). The Massachusetts legislature enacted the bidding statutes “to establish ‘open and honest procedure for competition for such public contracts.’ ” Majestic Radiator Enclosure Co., Inc. v. County Comm’rs of Middlesex, 397 Mass. 1002, 1003 (1986), quoting Modern Continental Construction Co. v. Lowell, 391 Mass. at 840.
In order to maintain the public trust in the public works system, the court must ensure that all bidders are on “an equal footing” in the competition to gain a contract award. Interstate Engineering Corp. v. Fitchburg, 367 Mass. 751, 757-58 (1975). Although there may be some added cost to the CA/T Project as a result of an injunction under these circumstances, even with an expedited resolution, the court must nevertheless act to preserve the aims of the statutory bidding scheme. The preservation of the public trust should not give way to the mere desire to save a few dollars. Peabody Construction Co. v. Boston, 28 Mass.App.Ct. at 103. Any “departure from the prescribed [conflict of interest] standards, however slight, becomes an entering wedge for more and greater departures.” Board of Selectmen of Avon v. Linder, 352 Mass. at 581.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for preliminary injunction be ALLOWED. The Commonwealth of Massachusetts, acting through the Mássachusetts Highway Department, is hereby enjoined from entering into a contract with GZA Geoenvironmental Technologies, Inc. for work encompassed in the specifications of the Central Artery/Tunnel Project No. C25A2 or from reopening the bidding process on such contract until the action before the court is heard and resolved on its merits, or until further order of the court.

The court’s inquiry into the appropriateness of injunctive relief is limited to that information contained in the record, including the plaintiffs verified complaint and the affidavits and other materials submitted in support of and in opposition to EWT’s preliminary injunction motion.