Doerfer, J.
This matter is before the court on plaintiffs, Environmental Waste Technology, Inc. (“EWT”), complaint and application for preliminary injunction to enjoin the defendant, Commonwealth of Massachusetts, Department of Environmental Protection (“DEP”), from awarding a construction contract to another bidder. The contract is for the installation of a sophisticated environmental barrier (a so-called “PRB”) needed to stop a migrating plume of contamination from reaching the drinking water wells used by the town of Wellesley. The installation will take place at the Microwave Development Laboratory, Inc. site in Needham, Massachusetts, DEP Project No. BWSC2000-00 (“the Project”). For the reason’s set forth below, plaintiffs application for preliminary injunction is DENIED.
FACTS
The following facts are drawn from the materials submitted by the parties in support and in opposition to the Plaintiffs Application for a Preliminary Injunction.
On April 23, 2000, DEP advertised the Invitation to Bid on the Project. The advertisement specifically stated that the DEP “reserve[d] the right to waive any informality in or reject any and all bids if it is in the public interest to do so.” Affidavit of Janine Commerford at pp 8. The DEP also specified, in Article 4.7 of its Instructions to Bidders, that the “(t]he Bid shall ... be enclosed in a sealed envelope.” The bids were solicited by the DEP pursuant to M.G.L.c. 30, sec. 39M.[1] Three firms, including EWT and Geo-Con, Inc. (“Geo-Con”) (the eventual winner), submitted bids at the bid opening on June 23, 2000. The bids of two of the firms were contained in sealed envelopes while the third, Geo-Con’s, was contained in a bound, plastic covered binder. Affidavit of Brendan Kiley, pp. 5. The only information appearing through the window of the cover of Geo-Con’s bid was the name and address of Geo-Con, and the DEP Project number. See id. Geo-Con’s bid was received in the presence of representatives of the other bidders including EWT and the fact that it was not in a sealed envelope was acknowledged by Brendan Kiley (“Mr. Kiley”) (the representative of the DEP), who stated that it would remain unopened along with the other two bids.[2] See id. at pp. 6.
At 3:00 p.m. on June 23, 2000, Mr. Kiley proceeded with the three bids, accompanied by the representative of ETW, Karen Foley, to the fourth floor conference room where the bids were to be publicly read. Before opening Geo-Con’s bound, covered binder Mr. Kiley repeated publicly that the bid had not been submitted in a sealed envelope, to which there was no objections voiced by those present (including Karen Foley, EWT’s representative). Karen Foley was a witness to the entire process of receipt, handling and reading of all the bids and at no time during the proceedings did she question or protest in any way the procedure followed by the DEP.
On June 26, 2000, after evaluating the two bids received,[3] the DEP determined that both bids contained deficiencies. In response the DEP, on July 7, 2000, prepared, in draft, separate rejection letters for EWT and Geo-Con, specifying to each the deficiencies found in their respective bids. Neither draft was sent to the bidders; rather they were included as part of an internal briefing packet dated July 25, 2000 which recommended rejection of both bids. Upon the advice of the DEP’s Office of General Counsel, the decision to reject was delayed pending evaluation of the DEP’s “legal flexibility” to seek supplemental information from both bidders regarding the identified deficiencies in their respective bids. Affidavit of Janine Commerford at pp. 19.
On August 2, 2000, the DEP decided that, rather than requesting new bids, both EWT and Geo-Con would be allowed to cure their respective deficient bids by supplemental submissions. On that same day the DEP sent letters to both EWT and Geo-Con requesting submissions concerning the “deficiencies and/or ambiguities” in their respective bids. Id. at PP 20.[4] EWT responded to the DEP’s request to cure and inquired into whether Geo-Con’s unsealed bid was a valid bid proposal on August 9,2000. In its reply, however, EWT failed to adequately cure the deficiencies listed in the DEP’s August 2, 2000 letter.[5] As a result of EWT’s incomplete response to its August 2, 2000 request to cure, the DEP, on August 17, 2000, rejected EWT’s bid in writing.[6] Id. at pp. 26. In contrast to EWT, Geo-Con, by its August 10, 2000 response to DEP’s request, successfully cured the deficiencies of its original bid and was tentatively awarded the contract on August 17, 2000.[7]
EWT contends that both M.G.L.c. 30, Sec 39M and the DEP’s own Bidder Instructions made it mandatory that the bid be “enclosed in a sealed envelope,” and that failure to do so required the DEP to reject the bid as informal as to substance. The DEP contends that the deviation was minor, and that the preliminary injunction requested by EWT enjoining DEP from entering into contract with other parties should be denied.
In determining whether to grant a preliminary injunction, this court considers the balancing test set forth in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). First, the court must evaluate, “the moving party’s claim of injury and its chances of success on the merits.” Id. at 617. If failing to issue the injunction “would subject the moving party to a substantial risk of irreparable harm, this court must then balance this risk against any similar risk or irreparable harm which granting the injunction would create for the opposing party.” Id. “If the moving party [can, however,] demonstrate both that the requested relief is necessary to prevent irreparable harm *372 to it and that granting the injunction poses no substantial risk of such harm to the opposing parly, a substantial possibility of success on the merits warrants issuing an injunction.” Packaging Indus., supra at 617, n. 12 (1980) (citations omitted).
“In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity.” Id. at 617 n. 11. Moreover, in appropriate cases, the court should also consider the risk of harm to the public interest. GTE Products Corp. v. Stewart, 414 Mass. 721, 723 (1993); Commonwealth v. Massachusetts, CRINC, 392 Mass. 79, 89 (1984); Board of Selectman of Manchester, 25 Mass.App.Ct. 637, 640 (1988). Finally, a preliminary injunction is a drastic remedy that a court should not grant unless the movant, by clear showing, carries its burden of persuasion. Charles Wright & Arthur Miller, 11 Federal Practice & Procedure, Sec. 2948 at 129-30 (1995).
1. It is not likely that Environmental Waste Technology, Inc. will succeed on the Merits of its Claim.
Based on the evidence before this court, there is no substantial likelihood that EWT will succeed on the merits. The bids in this case were solicited pursuant to M.G.L.c. 30, Sec. 39M which requires that public bids of the type which occurred in this case “shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read by such awarding authority forthwith upon expiration of the time for the filing thereof.”
“If a bid violates a statutoiyrequirement in matters of substance the bid must be rejected by the authority.” Peabody Const. Co, Inc. v. City of Boston, 28 Mass.App.Ct. 100, 103 (1989), citing Gil-Bern Constr. Corp. v. Brockton, 353 Mass. 503, 505-06 (1968) (citation omitted). “In such circumstances the authority lacks discretion in the matter and must reject the bid ‘even where no harm to the public authority was shown; where the violation benefited the public; and where there [is] no showing of bad faith or corruption.’ ’’ Id. at 103-04 (citations omitted). If, however, the deviation was not from a statutory requisite but was from a requirement imposed by the authority instead, “the authority has the discretion to accept or reject the bid.” Id.; see also J.J.&V. Const. Corp. of Fall River v. Commissioner of Public Works, 5 Mass.App.Ct. 391 (1977) (a failure to file a “Certification of Bidder Regarding Equal Employment Opportunity,” along with the bid as requested by the invitation was found to be an informality that the city had expressly reserved the right to waive).
In this case, Geo-Con’s bid did not violate any statutory requirement related to matters of substance. M.G.L.c. 30, Sec. 39M, states simply that contracts “shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read by such awarding authority." The plain reading of the statutory command, read fairly, is simply that bids be received in a closed format and, when opened the act of opening be performed publicly. This is precisely what happened on June 23, 2000 with respect to Geo-Con’s bid. Simply because Geo-Con’s bid was not contained in a sealed envelope, one may not conclude that it was not “publicly opened and read” as required by statute. Since EWT has pled no specific allegation that Geo-Con’s bid was opened and read in a non-public setting before 3:00 PM on June 23, 2000 it cannot claim that the statute was violated in this case.
In this case we are dealing with a deviation from a requirement imposed by the authority rather than by statute. Where a bid has deviated from a requirement [bid specification] imposed by the authority, the authority itself may within its discretion choose to accept the bid. In Article 4.7 of its Instructions to Bidders the DEP stated that the “[t]he Bid shall... be enclosed in a sealed envelope." The DEP also specifically stated, in its advertisement for its Invitation to Bid on the project, that it “reservefd] the right to waive any infer-, mality in or reject any and all bids if it is in the public interest to do so.” Affidavit of Janine Commerford at' pp. 8. By the language in its advertisement the DEP put all parties who might bid on the job on notice that it reserved the right to waive any of its own requirements as to the informalities of the bid if it so chose. The requirement that the bid “be enclosed in a sealed envelope,” under the facts presented in this case, certainly qualified as an informality which the DEP had reserved the right to waive.
There is no question, in this case, that all the bids were submitted on an equal footing, that there was no danger of bid tampering, and that all parties involved were given the “opportunity to bid in the same way, on the same information, and to bear the same risk of rejection.” Department of Labor and Industries v. Boston Water and Sewer, 18 Mass.App.Ct. 621, 626 (1984). Geo-Con’s bid was contained in a bound, plastic covered binder rather than an enclosed sealed envelope. Before Geo-Con’s bid was publicly opened Mr. Kiley “acknowledged that Geo-Con’s bid had not been submitted to [the] DEP in a sealed envelope.” Affidavit of Brendan Kiley at pp. 9. At the time Mr. Kiley’s statements were made EWT’s representative Karen Foley voiced no objections to Geo-Con’s bid being read. EWT has, in fact, made no specific allegations that Geo-Con’s bid, because it was contained in a bound, plastic covered binder rather than a sealed envelope, was treated different substantively than its own.
Eventually it was determined that both Geo-Con’s and EWT’s bids were deficient in several areas described in the Instructions to Bidder and as such could be rejected if the agency so chose. The agency instead gave each of the parties a chance to cure the deficien *373 cies in their bids. Geo-Con was able to cure its deficiencies, EWT was not. EWT cannot now, in good faith, argue that DEP’s initial waiver of its requirements as to EWT’s bid was allowable while the DEP’s waiver of Geo-Con’s bids failings were not.
2. Environmental Waste Technology, Inc. has not made a Sufficient Showing of Irreparable Harm.
Not only has EWT failed to demonstrate a likelihood of success on the underlying merits, they also have failed to make a sufficient showing of irreparable harm. EWT, since it would not be considered for the contract even if it were re-bid, will not be irreparable harmed if its preliminary injunction application is denied. Most important to the court’s decision on this issue are two facts: 1) EWT was given an opportunity to cure the defects in its own bid before the contract was awarded to Geo-Con and failed to do so; and 2) due to its own lack of experience in the area of PRB installation EWT will not be awarded the contract even if this court enjoins the contract being awarded to Geo-Con.[8] EWT has no present economic stake in the contract award and thus will suffer no irreparable harm if the DEP is not enjoined from awarding the contract to Geo-Con.
3. The Public May be Harmed if the DEP is Enjoined from Awarding the Contract to Geo-Con, Inc.
While it has not been shown that the contamination plume will reach the Wellesley Wells within the next six months or even the next several years, it has also not been shown that it won’t. In truth no one seems able to predict how long it will take for the contamination plume to reach the Wellesley Wells.[9] At the present time the contamination plume is roughly 900 feet from the Wellesley Wells, but it also has migrated some 1000 feet since 1996. There is at present no banrier between the contamination plume and the Wellesley Wells and unless the plume is intercepted it is expected to reach the wells at some future date. Where contamination of a public water supply is involved there is an obvious danger to the public. The DEP believes that it is possible to construct the PRB before the end of the 2000 calendar year, provided that the DEP is able to enter into a contract with Geo-Con no later than the first week of November 2000.[10] In this case the harm to the public could be exacerbated by any delay in the installation of the.PRB Barrier that the issuing of an injunction may cause.
ORDER[11]
For the foregoing reasons, it is hereby ORDERED that the plaintiff Environmental Waste Technology, Inc’s application for preliminary injunction is DENIED.

 M.G.L.c. 30 sec. 39M. states in relevant part that:
[e]very contract for the construction, reconstruction, alteration, remodeling or repair of any public work, or for the purchase of any material, as hereinafter defined, by the commonwealth, or political subdivision thereof, or by any county, city, town, district, or housing authority, and estimated by the awarding authority to cost more than ten thousand dollars, and every contract for the construction, reconstruction, installation, demolition, maintenance or repair of any building by a public agency, as defined by subsection one of section forty-four A of chapter one hundred and forty nine, estimated to cost more than ten thousand dollars but not more than twenty-five thousand dollars, shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read by such awarding authority forthwith upon expiration of the time for the filing thereof. . .

 EWT relying on the affidavit of Karen Foley, its representative at the bidding process on June 23, 2000, alleges in its Verified Complaint and Application for Declaratory and Injunctive Relief at PP 8 that Brendan Kiley upon receipt of Geo-Con’s bid stated that one of the bids would be not accepted because it was not submitted in a sealed envelope. For the purposes of this opinion the court finds the position of DEP, as supported by the Affidavit of Brendan Kiley, to be the more persuasive version of these events.

 The third bidder, SMW Seiko, Inc., only submitted a letter notifying DEP that it had elected not to bid on the project.

 See Affidavit of Janine Commerford at pp. 21-22 for a complete list of the deficiencies which each EWT and Geo-Con, Inc. were requested to cure.

 See Affidavit of Janine Commerford at pp. 25-26 for a complete list of the deficiencies in EWTs August 9, 2000 reply.

 The “primaiy .reason” for EWTs bid being rejected was that neither the firm of EWT nor Geo-Solutions {its proposed partner in the venture) “possessed the minimum prior PRB experience required in Appendix A, Part III of the bid specifications.” Affidavit of Janine Commerford at pp. 26. “The DEP rejection letter also identified the failure of EWT/Geo-Solutions to provide biopolymer breakdown test results from similar PRB installations, a PRB Demonstration Plan, and bid documentation jointly signed by EWT and Geo-Solutions as a joint venture, as a additional grounds for rejection of the bid.” Id.

 The final contract is to be awarded to Geo-Con, Inc. contingent upon DEP’s evaluation of the results of “an iron reactivity test of the iron/sand/slurry mix proposed by Geo-Con for field installation and a biopolymer breakdown test using town of Needham potable water." Affidavit of Janine Commerford at pp. 27

 As stated by the DEP in its rejection letter sent to EWT on August 17, 2000 and subsequent affidavits:
The primary reason for rejecting EWT/Geo-Solutions’ bid is that neither firm possessed the minimum prior PRB installation experience required in Appendix A, Part III of the bid specifications. While the oversight experience of Steve Day of Geo-Solutions meets the qualifications of the on-site personnel specification in Part II. H in Appendix A, Part III of the bid specifications require a qualified bidder to demonstrate that as a firm it has self-performed at least one prior PRB installation including the actual trench construction. From DEP’s perspective, this specification is a reasonable means of ensuring that the selected contractor has the demonstrated in-house capacity and actual experience to install the PRB called for in the specifications.
Affidavit of Janine Commerford at pp. 26.

 EWT in its Supplemental Memorandum of Facts on pages 6 and 7 cite to internal DEP transmittal memorandum in support of this conclusion. In Commissioner Liss’ July 6, 2000 internal memorandum the commissioner states that “[the DEP is] unable to predict what effect the re-bidding delay will have on the plume migration.” In another internal mem *374 orandum the DEP concluded that “[t]he risk of contaminants reaching the well at any particular point in time is unknown.”

 See October 11, 2000 Letter to this Court from Janine Commerford, Director, Division of Contract Procurement and Management of the Department of Environmental Protection.

 Nhe court is allowing EWT’s Emergency Motion to File Supplemental Memorandum of Facts, but nothing which the plaintiff presents therein would change the outcome of this matter.