Grasso, J.
*536 INTRODUCTION
This matter comes before the court on the application of defendant, TLT Construction Corporation (“TLT”), for a preliminary injunction. TLT seeks to enjoin plaintiff through its Division of Capital Planning and Development (“DCPO”) from issuing to TLT a Notice of Termination on the Suffolk County Courthouse Project (the “project”). For the reasons set forth below, TLT’s application is DENIED.
BACKGROUND
On December 31, 1992, TLT entered into a construction contract with plaintiff, the Commonwealth of Massachusetts (“Commonwealth”) to repair the exterior envelope of the Suffolk County Courthouse. The work required TLT to waterproof the exterior of the courthouse. During the renovations, TLT applied a waterproofing agent, Duramem V-500, to the outside walls of the courthouse. Waterproofing was suspended in June 1994, as a result of an odor problem associated with the Duramem.
On April 17, 1996, the Commonwealth filed this action seeking damages arising out of TLTs application of the Duramem in negligence, breach of contract, breach of warranty and indemnification. On the same day, DCPO terminated TLT’s construction contract “for cause.” TLT now brings this motion, seeking to prevent DCPO from terminating TLTs construction contract.
DISCUSSION
In determining whether to grant a preliminary injunction, this court conducts a balancing test. The court evaluates the moving party’s claim of injury together with its chance of success on the merits. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). If the court believes that a failure to issue the injunction would “subject the moving party to a substantial risk of irreparable harm” the court must balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. Id. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction be properly issued. Id.; Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990).
Where it is appropriate this court will also consider the public interest in determining whether to grant a preliminary injunction. GTE Products v. Stewart, 414 Mass. 721, 723 (1993); Brookline v. Goldstein, 388 Mass. 443, 447 (1983).
A. Irreparable Harm
Public bidding rules mandate that an update statement be filed with each public bid, requiring the contractor to disclose if they have ever been terminated from a project. G.L.c. 149 §44D. TLT claims it would be irreparably harmed by disclosing its termination by DCPO, because TLT could be denied a future project even if it is the lowest bidder.
TLT’s claims of future injuiy on the basis of the termination disclosure are both anticipatory and speculative, and provide no basis for judicial review. See Jefferson Construction Corp. v. Commonwealth, 386 Mass. 142, 143 (1982). TLT provides no evidence that it has lost a bid due to its termination on the Suffolk project, or that it will lose a contract where it is the lowest responsible bidder. Nor is there any indication that such a disclosure would disqualify TLT as a bidder on public projects. TLT currently holds a valid “certificate of eligibility” verifying that TLT has the classification and capacity rating to perform the work required. TLT can continue to bid on public projects.[2]
Finally, the update statement also requires TLT to disclose all legal proceedings currently pending against it. Even if the notice of termination issued by DCPO were enjoined, TLT would still be required to disclose the nature of the current proceedings on all future bids. TLT therefore has not demonstrated that a failure to issue the injunction would subject TLT to a substantial risk of irreparable harm.
B. Public Interest
It is also appropriate to consider the public interest where a public entity is a party. Brookline, supra at 447; Bank of New England, N.A. v. Mortgage Corp. of New England, 30 Mass.App.Ct. 238, 247 (1991).
The public bidding laws are a complex statutory scheme designed to ensure that the awarding public authority obtains the lowest bid among responsible contractors, and also to establish an open and honest procedure for competition for public contracts. Modern Continental Const. Co., Inc. v. City of Lowell, 391 Mass. 829, 840 (1984). Bidder prequalification, of which the update statement is a part, is not a mere formality, but a “cornerstone of the competitive bidding statute.” Id.
TLTs request for injunctive relief would disrupt a statutory scheme designed to protect the public interest by requiring all potential bidders to disclose relevant information which the awarding authority “shall consider.” G.L.c. 149, §44D(6). All public awarding authorities rely on the update statement and the disclosures within. The public interest is best served with TLTs compliance with these laws. A balance of the equities therefore tips in favor of the Commonwealth when considering the public interest aspects of the relief requested.
CONCLUSION
For the reasons set forth above, TLT’s application for a preliminary injunction is DENIED.

TLT’s active bidding status is illustrated by recent events. DCPO has not taken any steps to decertify TLT as a result of the Suffolk project. On February 29, 1996, DCPO issued to TLT a “certificate of eligibility” valid through February 29, 1997. Furthermore, on May 31, 1996, TLT was awarded a twenty-one million dollar public contract by the town of Haverhill on a bid submitted on May 16, 1996.